

August 12, 2025

The Court is in receipt of this unsolicited correspondence from non-parties who style themselves as "The Litigants of Waterman Watch." The correspondence and materials accompanying the non-parties' correspondence do not appear to state a claim for relief which may be granted by this Court. SO ORDERED.

Dale E. Ho
United States District Judge
Dated: August 20, 2025
New York, New York

**Honorable Dale E. Ho**
United States Courthouse
40 Foley Square
New York, NY 10007

**Re: Contextual Support for Plaintiff Joseph Goldstein in Goldstein v. Newman et al (Case # 1:25-cv-04118)**
**Enclosure: July 16, 2025 Attorney Grievance**

To the Court and Counsel:

We write in connection with the above-referenced federal case to express support for Joseph Goldstein, and to provide important context regarding the broader legal environment in which his allegations arise.

While the idea that a sitting prosecutor might conspire with colleagues and law enforcement to orchestrate a fabricated arrest of her spouse may appear surreal on its face, this is, unfortunately, not without precedent. This kind of weaponization of the criminal and civil legal systems has become a recognizable and deeply concerning pattern within New York City's matrimonial courts.

Under current practice, a litigant who successfully engineers the arrest of their spouse (particularly in the early stages of a custody or divorce proceeding) gains near-immediate access to significant legal advantages, including:

- Orders of protection, frequently granted ex parte;
- Exclusive use and occupancy of the marital residence;
- Temporary sole custody of minor children, and;
- A substantial psychological and strategic upper hand in ensuing litigation.

This tactic also forces the accused spouse into a costly and urgent legal defense, often under reputational threat, financial duress, and limited access to their children all before any factual finding has been made. Even in cases where charges are later dropped or found baseless, the consequences are enduring, including accused spouses being forced to become pro se litigants after financial resources have been exhausted.

1

This disturbing trend is exacerbated by New York Domestic Relations Law § 236B(5)(d)(14), which permits courts to consider domestic violence allegations. While designed to protect survivors, this provision is increasingly being abused by parties seeking to shift asset divisions or custody outcomes, often using unverified or manufactured allegations as leverage.

Mr. Goldstein's complaint reflects precisely this pattern. His allegations are far from outlandish when viewed in light of broader litigation practices that have been documented, reported, and now formally challenged. We enclose herewith a grievance filed on July 16, 2025, with the Departmental Disciplinary Committee for the First Department by the advocacy group *Waterman Watch*. The grievance outlines repeated instances of alleged judicial and attorney misconduct in Manhattan matrimonial proceedings, including:

- Failure to advise unrepresented litigants of their right to counsel in contempt proceedings;
- Wrongful incarceration of pro se parties without due process;
- Collusion between judges and select attorneys, some of whom allegedly benefited financially from the pressure imposed on vulnerable litigants;
- And even willful violations of federal bankruptcy automatic stays.

Notably, many of the attorneys named in the grievance are associated with high-conflict matrimonial litigation practices (such as Teitler & Teitler and Blank Rome) in the same jurisdiction where Mr. Goldstein's custody matter unfolded. The parallels between the allegations in his lawsuit and the systemic issues raised in the grievance are difficult to ignore.

Moreover, the judge at the center of the grievance—Hon. Kathleen Waterman Marshall—was reassigned in January 2025 following public reporting and investigation by NBC journalist Sarah Wallace, reinforcing that these concerns have already triggered institutional responses.[1]

In closing, Mr. Goldstein's experience, while alarming, is unfortunately not isolated. It is emblematic of a growing pattern of misuse of the courts as a strategic weapon in domestic litigation. The federal claims in this case deserve to be evaluated not just on the facts alleged, but also against the well-documented context in which they allegedly occurred.

We appreciate your attention to this letter and the enclosed materials, and respectfully offer them as context for the court and parties to consider as proceedings continue.

---

[1] Notably, Hon. Kathleen Waterman Marshall advocates use of the tactics allegedly used in Mr. Goldstein's case, including noting in her official biography: "Justice Waterman-Marshall was the first judge to interpret and apply an amendment to the Domestic Relations Law that now requires the court to consider domestic violence in the distribution of marital assets, thus redressing upon a divorce the real harms of emotional and physical abuse and financial coercive control that occurred during the marriage (J.N. v. T.N., 77 Misc. 3d 894, 182 N.Y.S.3d 497 [N.Y. Sup. Ct. 2022]; see "The 'Bad Actor Syndrome' in Matrimonial and Family Law: The Misbehaving Spouse or Parent," Alton L. Abramowitz and Leigh Baseheart Kahn, New York Law Journal, September 20, 2024; "Mr. Bumble and the Role of Fault in Equitable Distribution," Timothy M. Tippins, New York Law Journal, January 4, 2024, Expert Analysis; 11 N.Y.Prac., New York Law of Domestic Relations § 14:75)."

July 16, 2025

Departmental Disciplinary Committee for the First Department
180 Maiden Lane, 17th Floor
New York, New York 10038
ad1-agc-newcomplaints@nycourts.gov

We respectfully submit this grievance concerning almost thirty New York City attorneys who reportedly violated the Rules of Professional Conduct, in concert with former matrimonial judge, Kathleen Waterman Marshall. They reportedly acted together to deprive *unrepresented* parties of their right to legal representation when facing contempt and incarceration.[1] We respectfully seek their immediate suspension and a swift investigation. We believe the facts support *significant consequences* commensurate with alleged *significant misconduct*, outlined as follows:

- The Need for Immediate Suspension
- Conflicts of Interest
- The Need for Swift Resolution
- Illustrative Examples
- Legal & Ethical Protections

---

**THE NEED FOR IMMEDIATE SUSPENSION**

Since 2023, the court administration and the judicial governing body were notified about Judge Waterman's alleged conduct. In August 2024, we asked for "immediate intervention" to prevent her from causing any more harm.[2] Our call was ignored, and as we feared, the failure to intervene resulted in more irreparable, *but avoidable*, harm to more litigants. More were held in wrongful contempt and faced incarceration. Two months ago, a bankruptcy judge ruled that the conduct of Judge Waterman and attorneys, in one of those cases, was a willful violation of federal law.

This willfulness is not limited to isolated incidents in select proceedings. In the bankruptcy example mentioned above, there were many hearings across state and federal courts with extensive motion practice over eight months. Judge Waterman and attorneys ensured the record reflected that the delays were allegedly caused by the pro se litigant, whom Judge Waterman had ordered to pay fees as a penalty

for the alleged obstruction. But there was no obstruction. All of it was legal theater whose encore was the threat of imprisonment. Their willful violation of federal law was also a willful waste of judicial resources, and, at its heart, a willful perversion of justice.

This case and eight other wrongful contempt cases are detailed in the enclosed exhibit. Allegedly, in no instance across these nine cases did Judge Waterman or attorneys adhere to due process. Over three years, they allegedly were complicit in ensuring that the unrepresented parties were never notified of their right to an attorney. In three instances, the unrepresented parties were sentenced to imprisonment at Rikers Island.

In light of this continued, demonstrable and immediate risk posed to the public of wrongful contempt and incarceration, we respectfully ask for the interim suspension of the attorneys listed below, pending the investigation (see Matter of Giuliani [197 AD3d 1]).

1. Deana Balahtsis, Balahtsis Law
2. Deborah Blum, Law Office of Deborah J. Blum
3. Andre Brittis-Tannenbaum, Teitler and Teitler
4. Grace Chamoun Taranto, Krauss Shaknes Tallentire and Messeri[3]
5. David Collins, current Clerk
6. Caitlin Connolly, Aronson Mayefsky and Sloan
7. Tara Diamond, Diamond, Fee and Kalos
8. Ada Guillod, Department of Homeland Security, ICE
9. Matthew Kesten, Schwartz Sladkus Reich Greenberg Atlas
10. John Lampitelli, Teitler and Teitler
11. Beatrice Leong, Law Office of Beatrice Leong
12. Nicholas Lobenthal, Teitler and Teitler
13. Virginia LoPreto, LoPreto and Levy
14. Jordan Messeri, Krauss Shaknes Tallentire and Messeri
15. Jonathan Nelson, Nelson Robinson
16. Dilpreet Rai, Rower
17. Laura Ravinsky, Berkman Bottger Newman and Schein
18. Madeleine Robinson, former Clerk[4]
19. Timothy Roque, Nelson Robinson
20. Cara Sheena, Schwartz Sladkus Reich Greenberg Atlas

21. Michael Stutman, Alter Wolff Foley and Stutman
22. Heidi Tallentire, Krauss Shaknes Tallentire and Messeri
23. David Turchi, Turchi Law
24. Brett Ward, Blank Rome
25. Jaime Weiss, Teitler and Teitler
26. Judith White, Lee Anav Chung White Kim Ruger and Richter
27. Sabrina Woods, Lee Anav Chung White Kim Ruger and Richter

We make this request out of grave concern for the public, who still face these attorneys in many cases. These attorneys have reportedly engaged in the *most extreme misconduct* possible in New York State, as wrongful incarceration is the *most extreme irreparable harm* that can be inflicted upon litigants in a state without the death penalty. We believe these facts provide justification for their immediate, interim suspension.

---

**CONFLICTS OF INTEREST**

In addition to allegedly committing grave misconduct, six of the lawyers or their law firms, in late 2024, cosigned or otherwise supported three articles defending Judge Waterman. In so doing, after allegedly working in concert with Judge Waterman to violate the law, they apparently defended her to conceal their collusion. Those lawyers are:

- Grace Chamoun Taranto, formerly with Blank Rome
- Virginia LoPreto, LoPreto and Levy
- Jordan Messeri, Krauss Shaknes Tallentire and Messeri
- Michael Stutman, Alter Wolff Foley and Stutman
- Heidi Tallentire, Krauss Shaknes Tallentire and Messeri
- Brett Ward, Blank Rome

A staggeringly high proportion, seven out of the nine cases, involve graduates of the Cardozo School of Law as adversarial parties. Judge Waterman is a Cardozo alumna. The Cardozo connection points to further potential for alleged collusion, including possible ex parte interactions, between the judge and fellow alumni against pro se litigants. Those seven Cardozo attorneys are:

- Deborah Blum, Law Office of Deborah J. Blum

- Jordan Messeri, Krauss Shaknes Tallentire and Messeri
- Jonathan Nelson, Nelson Robinson
- Dilpreet Rai, Rower
- Laura Ravinsky, Berkman Bottger Newman and Schein
- Brett Ward, Blank Rome
- Jaime Weiss, Teitler and Teitler

Cardozo graduates were reportedly behind two of the three articles defending their fellow alumnus Judge Waterman. Cardozo graduates were the largest subgroup, out of almost ninety attorneys, that cosigned the third article defending Judge Waterman. It is concerning that Cardozo graduates are Judge Waterman's largest advocates while simultaneously appearing to be the largest group of attorneys who committed the most extreme professional misconduct.

In addition to publicly defending the judge and the law school connection, there is another set of potential conflicts. These alleged conflicts involve the following Departmental Disciplinary Committee (AGC) members:

- Abigail Reardon, Chair
- Russell Capone
- Robert Cohen
- Julie Goldscheid
- Amy Legow
- Arthur Luxenberg
- S. Yan Sin
- Judge Milton Tingling
- Terel Watson
- Judith White

We contacted Jorge Dopico, the Chief Attorney for the AGC, several times since April 15th, 2025, offering to provide detailed information about the alleged conflicts of these AGC members. We wanted to understand how the AGC would ensure bias would not influence this grievance. We asked if a different departmental AGC committee should conduct the investigation.

But we did not receive a response. Here are three of the many possible conflicts:

- **Robert Cohen** is an AGC member for at least six years. His firm, Cohen Clair Lans Greifer & Simpson, was a cosignatory to the third article defending Judge Waterman.
- **Amy Legow, Arthur Luxenberg** and **Terel Watson** are graduates of Cardozo.[5]
- **Judith White** has also been an AGC member for at least six years. She is one of the subjects of this complaint. Ms. White's conduct, alongside Judge Waterman's, was described by a bankruptcy judge as a willful violation of federal law.

**THE NEED FOR SWIFT RESOLUTION**

Multiple grievances have been filed by individuals with the AGC since 2023. Those grievances have received no substantial response beyond "the investigation is pending," in some cases, even after a year. This lack of a swift response erodes public trust in the disciplinary process. Moreover, in the context of the failure to act swiftly against Judge Waterman, a prolonged investigation by the AGC will likely result in more harm being inflicted upon other New Yorkers.

We are grateful that almost ten AGC members have backgrounds in criminal matters, as their expertise will allow the investigation to be concluded easily, within weeks. Because the crux of this grievance, wrongful contempt and incarceration, lies within their specific area of expertise.

The Rules of Professional Conduct are clear on an attorney's obligations to disclose controlling legal authority and to not knowingly assist a judge in violating legal or ethical standards. Therefore, the attorneys being investigated can quickly attest to their behavior. We respectfully request that the attorneys be asked to respond within five days to the following inquiry:

For cases in which your firm appeared, since 2022, before Judge Waterman:

1. Did the judge fail to inform an unrepresented litigant, who was facing contempt, about the right to counsel?
2. In those cases, did your firm disclose controlling legal authority?

**ILLUSTRATIVE EXAMPLES**

It is easy for judges to abide by due process. The necessary disclosures, as seen below, must be made by the judge at the start of the hearing when an unrepresented party first appears:

```
        THE COURT:  Okay.  Service is complete and issue
is joined.  Okay.
        The next thing that we need to address, ma'am, is
that you have the right to be represented by an attorney in
this case.  You have three choices about how to proceed
with regard to counsel.  Option number one is you can hire
any attorney that you choose at your own expense.  Option
two is that you can ask this Court to appoint an attorney
```

> for you if you cannot afford your own. And option three is you can waive your right to an attorney and speak to the Court directly without the benefit of an attorney's assistance. Do you understand your three options, ma'am?
>
> ▇▇▇▇▇▇▇: I do.
>
> THE COURT: And which of those options would you like to select?
>
> ▇▇▇▇▇▇▇: As of right now, I'm not able to afford an attorney. Is there some sort of --
>
> THE COURT: Are you asking the Court to appoint an attorney for you?
>
> ▇▇▇▇▇▇▇: Yes, please.
>
> THE COURT: How do you support yourself financially?

But across the nine wrongful contempt cases, allegedly, Judge Waterman never made any required disclosures while attorneys stayed silent on the rights of the unrepresented party. Instead, as seen below, she sometimes flippantly played upon the terror of incarceration. Four attorneys – **David Collins, Madeleine Robinson, Judith White, Sabrina Woods** – were allegedly present during this exchange:

> So on these contempt proceedings, if you are held in contempt and Ms. White asked me to incarcerate you, then you will be incarcerated if that's what the record shows. So that's your reality, sir.

Likewise, in the following example, attorneys for the powerful litigant stayed silent as Judge Waterman moved to immediately arrest the pro se litigant. The attorneys observed Judge Waterman fail to make the due process disclosures and to announce instead that he was about to be arrested. As soon as the pro se litigant attempted to make a record that he did not have an attorney, Judge Waterman interrupted him to stop him from speaking any further. Attorneys **Grace Chamoun Taranto** and **Brett Ward** were allegedly present during this violation of due process:

```
        THE COURT:  So the warrant for your arrest is
open.  And as a result of that, sir, I just have a question
for you, are you in a position to purge your contempt?  Can
you purge your contempt this day?
        ▮▮▮▮▮▮▮▮:  I don't understand what that means.
I don't have an attorney --
        THE COURT:  That means -- I will refresh your
recollection, because it has been over a year since I
issued this order.  So I'll just make the record to refresh
your recollection.  Do you recall that in March of 2022 and
April of 2022 specifically March 28th and April 8th of 2022
```

In the following example, Judge Waterman denied the unrepresented party an attorney *even though he repeatedly requested one.* Seven attorneys – **Andre Brittis-Tannenbaum, David Collins, Tara Diamond, John Lampitelli, Nicholas Lobenthal, Madeleine Robinson, Jaime Weiss** – were allegedly present and witnessed this violation of constitutional rights but, in spite of their professional obligation, said nothing. They remained silent as Judge Waterman, again, stopped the pro se party from speaking as soon as he said he did not have an attorney ("… I did not ask you to speak … you be quiet now"):

Now, ▮▮▮▮, am I incorrect? Have you paid Ms. Diamond, CFS or the forensic? Did I get that wrong?

▮▮▮▮: Is that a contempt question, your Honor?

THE COURT: No, sir, that is a question. Period. Did you pay those professional fees, yes or no?

▮▮▮▮: I would like to get the advice of counsel. That feels like a contempt question, your Honor.

THE COURT: I don't care what it feels like, ▮▮▮▮, it is simply a question whether or not as of today, have you paid those fees.

▮▮▮▮: That is my response, I would like to consult with an attorney.

THE COURT: Okay, thank you.

▮▮▮▮: You're welcome.

THE COURT: I'll deal with that in a moment. Okay.

▮▮▮▮: As you noted, there is no attorney here. I am not represented.

THE COURT: ▮▮▮▮, I did not ask you to speak and that -- so you be quiet now. Thank you.

Attorneys **Madeleine Robinson** and **Timothy Roque** were allegedly present in the example below and remained silent as Judge Waterman not only again denied the pro se litigant counsel but also claimed the right did not exist ("... no, you are not entitled to a public defender"):

> ▇▇▇▇▇▇▇▇▇: If his order to show cause includes allegations that could lead to criminal sanctions am I not entitled to an attorney?
>
> THE COURT: I'm not giving you an attorney right now because I don't know what his motion is for. And it's civil contempt, sir. It is a motion to hold you in civil contempt, which if you read the statute, which I trust that you know how to do, you will see that as part of the civil remedy I can incarcerate you for up to I believe six months for failure to pay child support. It is not a criminal proceeding. So it is of a different nature. You will get the papers and read them.
>
> And, no, you are not entitled to a public defender in the same way as if you were being charged by the People of the State of New York. This is a civil proceeding. The

Both Ms. Robinson and Mr. Roque were obligated to disclose controlling law and to not assist the judge in violating the law. Instead, they stayed silent like the other attorneys listed in this grievance.

## LEGAL & ETHICAL PROTECTIONS

In New York, unrepresented parties have a constitutional and statutory right to counsel in contempt matters. This right is so fundamental that appellate courts will reverse the lower court and order a new hearing when a party was deprived of this right (see Hoffman v Hoffman [220 AD3d 639], Matter of Worsdale v Holowchak [170 AD3d 1027] and Matter of Goodine v Evans [183 AD3d 649]). The Appellate Division and a New York support magistrate have provided examples of the due process

disclosures and "search inquiry" required of judges (see Carney v Carney [160 AD3d 218] or Self-Representation: A Right To Be Reckoned With).

Legal representation "shall be provided at the first court appearance or immediately following the request for counsel, whichever is earlier," and that reasons for denial shall be documented in writing along with the procedure for reconsideration (see Uniform Rules for the Family Court § 205.19). In addition, judges must obtain a knowing waiver of the right to counsel from pro se parties before the hearings are advanced.

Alongside these judicial requirements, attorneys are ethically bound to disclose controlling legal authority and must not knowingly assist a judge in violating legal or ethical standards (see The New York Rules of Professional Conduct).

The record across the nine cases, spanning three years, reportedly does not reveal a single instance when unrepresented parties were afforded due process. Instead, the following scenario allegedly played out every time:

- Attorneys moved for contempt against unrepresented parties, or parties lost counsel in the middle of the contempt proceedings.
- Judge Waterman and attorneys advanced the contempt proceeding.
- In every case, the pro se party was found in contempt.
- In some cases, Judge Waterman delayed or denied the right to counsel.
- In those cases where she denied counsel, Judge Waterman failed to document in writing the "reasons for denial" along with a process for reconsideration.
- In some cases, Judge Waterman appointed a lawyer after the party was held in contempt.
- In three cases, the pro se party was ordered to serve time at Rikers Island. The average incarceration period was over three months.

## CONCLUSION

Judge Waterman and attorneys allegedly stayed silent or outright denied the right to counsel throughout those nine cases over three years.

There were about thirty court appearances across those nine cases subsequent to the powerful spouse moving for contempt. There were thirty chances for Judge Waterman and attorneys to follow the law.

*Thirty times, they did not.*

At its heart, this grievance describes the most powerful, knowledgeable parties – officers of the court – reportedly often and willfully exploiting the most vulnerable parties – those not only without legal representation but those without the ability to afford legal representation.

As alleged in this grievance, almost thirty attorneys willfully violated the law multiple times alongside Judge Waterman. We did not find a single example, across nine cases, three years and about thirty appearances, when Judge Waterman or those attorneys adhered to their legal and ethical mandates as an unrepresented party faced contempt and incarceration.

As alleged, the intent was to force unrepresented parties, under the threat of imprisonment, to abandon their rights and settle out of fear. In three instances, parties were committed to incarceration at Rikers Island. The financial, emotional and mental harm to those parties is immense. But the attorneys' silence, in some cases, allegedly led to great financial benefit to them or their powerful clients, as pro se parties reportedly lost claims to millions in assets in return for vacating the pending arrest. Those officers of the court allegedly used legal theater to willfully accomplish their aims, and in doing so, reportedly willfully violated the law and wasted significant judicial resources.

We respectfully ask the AGC to heed the lesson learned when others failed to take swift action to halt Judge Waterman's alleged misconduct. **Irreparable harm will continue.** In order to prevent any more irreparable harm, we respectfully seek:

- An immediate, interim suspension of those attorneys;
- A swift investigation; and
- Access to the disciplinary process related to this grievance.

We reserve all rights, especially those afforded under the First Amendment, regarding this complaint.

Respectfully submitted,
The Litigants of Waterman Watch

cc:

Hon. Brad Hoylman-Sigal, New York State Senator

Hon. Charles Lavine, New York State Assemblymember

<u>1</u>

Reference the enclosed judicial complaint against Judge Waterman for additional details.

<u>2</u>

Joint complaint submitted to Judge Deborah Kaplan, Judge Adam Silvera and Judge Jeffrey Sunshine.

<u>3</u>

Ms. Chamoun Taranto was previously employed by Blank Rome.

<u>4</u>

Ms. Robinson left Judge Waterman's chambers to work for Mosberg Sharma Stambleck Gross.

<u>5</u>

We are not suggesting that all graduates of Cardozo are bad actors. Instead, the pattern across those nine cases allegedly reveals that in seven cases, *those* Cardozo graduates under Judge Waterman, a fellow alumna, were bad actors.