**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JOSEPH GOLDSTEIN,

  *Plaintiff,*

v.

LAWRENCE H. NEWMAN, KELLY
KEATING, AMANDA GOUN, RACHEL
LUTZ, and CARMEN FABIAN,

    *Defendants.*

No. 25-CV-4118 (DEH)

**ORAL ARGUMENT REQUESTED**

**DEFENDANT AMANDA GOUN'S NOTICE OF MOTION TO DISMISS THE AMENDED
COMPLAINT AND TO STRIKE ALLEGATIONS CONCERNING SEALED MATERIAL
FROM THE PARTIES' DIVORCE PROCEEDING**

PLEASE TAKE NOTICE that, upon the pleadings and the annexed Memorandum of Law,

the Declaration of Eric S. Rosen, and all prior pleadings and proceedings herein, Defendant

Amanda Goun moves this Court, before the Hon. Dale E, Ho, United States District Judge, at the

United States Courthouse for the Southern District of New York, 40 Foley Square, New York,

New York, at a date and time to be determined by this Court, for an Order pursuant to Federal

Rules of Civil Procedure 12(b)(1) and 12(b)(6), dismissing all claims against Amanda Goun with

prejudice in their entirety, and awarding such other relief as the Court may deem just and proper.

In the alternative, Defendant Amanda Goun moves for an Order pursuant to Federal Rule of Civil

Procedure 12(f) to strike all allegations in the Amended Complaint that purport to characterize the

substance of confidential proceedings from the parties' matrimonial action, including a forensic evaluation report that is the subject of a strict non-disclosure order.

Dated: September 1, 2025

Respectfully submitted,

*/s/ Eric S.  Rosen*
**DYNAMIS LLP**
Eric S. Rosen
Jamie Hoxie Solano
Tyler Finn
11 Park Place, 4th Floor
New York, New York 10007
Tel: (617) 802-9157
erosen@dynamisllp.com
jsolano@dynamisllp.com
tfinn@dynamisllp.com

Rena Paul
The Paul Firm
347 Fifth Avenue, Suite 1402-496
New York, NY 10016
(917) 994-2693
rena@thepaulfirm.com

*Attorneys for Defendant Amanda Goun*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

JOSEPH GOLDSTEIN,

*Plaintiff,*

v.

LAWRENCE H. NEWMAN, KELLY KEATING, AMANDA GOUN, RACHEL LUTZ, and CARMEN FABIAN,

*Defendants.*

No. 25-CV-4118 (DEH)

**ORAL ARGUMENT REQUESTED**

---

**<u>DEFENDANT AMANDA GOUN'S MOTION TO DISMISS THE AMENDED COMPLAINT AND TO STRIKE ALLEGATIONS CONCERNING SEALED MATERIAL FROM THE PARTIES' DIVORCE PROCEEDING</u>**

Eric Rosen
Jamie Hoxie Solano
Tyler Finn
**DYNAMIS LLP**
11 Park Place, 4th Floor
New York, New York 10007
Tel: (617) 802-9157
Email: erosen@dynamisllp.com
Email: jsolano@dynamisllp.com
Email: tfinn@dynamisllp.com

Rena Paul
The Paul Firm
347 Fifth Avenue, Suite 1402-496
New York, NY 10016
Tel: (917) 994-2693
Email: rena@thepaulfirm.com

*Attorneys for Defendant Amanda Goun*

## **TABLE OF CONTENTS**

INTRODUCTION .................................................................................................. 1

LEGAL STANDARD ............................................................................................ 3

ARGUMENT ........................................................................................................ 4

  I.   THE COURT SHOULD DISMISS ALL FEDERAL CLAIMS BECAUSE THEY FAIL
       TO STATE A CLAIM FOR RELIEF ............................................................ 4

     A.   Amanda Goun was a Victim, Not Acting Under Color of State Law ........................ 4

     B.   The Independent Judgment of Multiple Police Officers and Prosecutors Are
          Intervening Events Fatal to Plaintiff's Claims .......................................... 12

  II.  THE COURT SHOULD DISMISS THE FEDERAL CLAIMS UNDER THE DOMESTIC
       RELATIONS ABSTENTION DOCTRINE ..................................................... 13

  III. THE STATE LAW CLAIMS FOR ALLEGED OFFICIAL MISCONDUCT FAIL TO
       STATE A CLAIM FOR RELIEF ................................................................. 17

     A.   Plaintiff's Section 487 Claim is Frivolous Because Defendant Goun Was Not an
          Attorney in the Criminal Court Proceedings ........................................... 17

     B.   Plaintiff's Claim for State Law Conspiracy Fails Because New York Does Not
          Recognize Civil Conspiracy as an Independent Tort and, in any event, the Claim is
          Time-Barred ................................................................................. 18

  IV. THE COURT LACKS JURISDICTION OVER THE STATE LAW THEFT CLAIMS .. 19

  V.  THE COURT SHOULD STRIKE ALL ALLEGATIONS THAT DISCLOSE THE
       MATRIMONIAL PROCEEDINGS AND FORENSIC REPORT .................................... 21

CONCLUSION ..................................................................................................... 25

# TABLE OF AUTHORITIES

**CASES**

*Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328 (2d Cir. 2006). .............................. 19

*Ankenbrandt v. Richards*, 504 U.S. 689 (1992). .......................................................................... 14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009). ......................................................................................... 4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). ........................................................................ 3

*Bermudez v. City of New York*, 2014 WL 11274759 (S.D.N.Y. Mar. 25, 2014) ......................... 12

*Betts v. Shearman*, 751 F.3d 78 (2d Cir. 2014) ...................................................................... 5, 6, 9

*Bill Birds, Inc. v. Stein L. Firm, P.C.*, 35 N.Y.3d 173 (2020) ...................................................... 17

*Bumbury v. City of New York*, 880 N.Y.S.2d 44 (1st Dep't 2009) ............................................... 18

*City of Almaty, Kazakhstan v. Ablyazov*, 2021 WL 1180058 (S.D.N.Y. Mar. 29, 2021). ........... 20

*Cohen Bros. Realty Corp. v. Mapes*, 181 A.D.3d 401 (1st Dep't 2020) ...................................... 18

*Crosby v. Stew Leonard's Yonkers LLC*, 695 F. Supp. 3d 551 (S.D.N.Y. 2023) ......................... 22

*Curley v. AMR Corp.,* 153 F.3d 5 (2d Cir. 1998). ........................................................................ 10

*Deem v. DiMella-Deem*, 941 F.3d 618 (2d Cir. 2019). ............................................. 3, 14, 15, 16

*Donohue v. Pataki*, 28 F. App'x 59 (2d Cir. 2002) ...................................................................... 15

*Dowlah v. Dowlah*, 2010 WL 889292 (E.D.N.Y. Mar. 10, 2010) ................................................ 15

*Evans v. Adams*, 714 F. Supp. 3d 119 (E.D.N.Y. 2024) .............................................................. 16

*Fiedler v. Incandela,* 222 F. Supp. 3d 141 (E.D.N.Y. 2016) ....................................................... 11

*Fisk v. Letterman*, 401 F. Supp. 2d 362 (S.D.N.Y. 2005) ............................................................. 9

*Gierlinger v. Gleason*, 160 F.3d 858 (2d Cir. 1998) ................................................................ 4, 12

*Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268  (2d Cir. 1999). ........................... 5

*Giordano v. City of New York*, 274 F.3d 740 (2d Cir. 2001) ......................................................... 4

*Haywood v. Drown,* 556 U.S. 729 (2009) ........................................................................ 16

*Keane v. Keane*, 2012 WL 6582380 (S.D.N.Y. Dec. 17, 2012), .................................... 15

*Keane v. Keane*, 549 F. App'x 54 (2d Cir. 2014) ........................................................ 15

*Kottler v. Deutsche Bank AG*, 607 F. Supp. 2d 447 (S.D.N.Y. 2009) ........................... 18

*Kounitz v. Slaatten,* 901 F. Supp. 650  (S.D.N.Y.1995)............................................. 24

*Leonard F. v. Israel Discount Bank of New York,* 199 F.3d 99 (2d Cir. 1999) . ............. 4

*Lewis v. Pelham Country Club*, 2024 WL 4275588 (S.D.N.Y. Sept. 24, 2024)............... 19

*Lipsky v. Commonwealth United Corp.*, 551 F.2d 887 (2d Cir. 1976), .......................... 24

*Lisa C.-R. v. William R.*, 635 N.Y.S.2d 449 (Sup. Ct. 1995). ..................................... 23

*MDB LLC v. Hussain,* 2016 WL 1267793 (S.D.N.Y. Mar. 29, 2016)............................. 21

*M.D.S. v. E.W.*, 214 N.Y.S.3d 671 (Sup. Ct. 2024) ..................................................... 22

*Monsky v. Moraghan*, 127 F.3d 243 (2d Cir. 1997)...................................................... 5

*One Commc'ns Corp. v. JP Morgan SBIC LLC*, 381 F. App'x 75 (2d Cir. 2010) ........... 19

*Palmer v. City of New York*, 564 F. Supp. 3d 221 (E.D.N.Y. 2021)............................... 8

*People v. Canale*, 658 N.Y.S.2d 715 (3d Dep't 1997)................................................. 17

*Powell v. Lab Corp.*, 789 F. App'x 237 (2d Cir. 2019) ............................................... 18

*Schlotthauer v. Sanders*, 153 A.D.2d 731 (2d Dep't 1989) ........................................ 18

*Seagrape Invs. LLC v. Tuzman*, 2020 WL 5751232 (S.D.N.Y. Sept. 25, 2020).............. 18

*Stadnick v. Vivint Solar, Inc.*, 861 F.3d at 35 (2d Cir. 2017) ....................................... 4

*Tacopina v. Kerik*, 2016 WL 1268268 (S.D.N.Y. Mar. 31, 2016).................................. 17

*Townes v. City of New York*, 176 F.3d 138 (2d Cir. 1999) ........................................... 12

*United Mine Workers v. Gibbs*, 383 U.S. 715 (1966). ................................................. 19

*Vega v. Fox*, 457 F. Supp. 2d 172 (S.D.N.Y. 2006)..................................................... 12

*Weintraub v. Bd. of Educ. of City of New York*, 423 F. Supp. 2d 38 (E.D.N.Y. 2006)................10

*Wellnx Life Scis. Inc. v. Iovate Health Scis. Research Inc.*, No. 1:06-cv-07785-PKC (S.D.N.Y.

    Aug. 13, 2007),.........................................................................................................22

*Wigand v. Flo–Tek, Inc.*, 609 F.2d 1028 (2d Cir. 1979) ......................................................20

*Williams v. CVS Pharmacy, Inc.*, 6 N.Y.S.3d 78, 79 (2d Dep't 2015) .........................................19

*Wood v. Mike Bloomberg 2020, Inc.*, 2024 WL 3861828 (S.D.N.Y. Aug. 19, 2024) .................22

*Zappin v. Comfort*, 2024 WL 5001624 (2d Cir. Dec. 6, 2024) ....................................................16

**STATUTES**

28 U.S.C. § 1367. .....................................................................................................................19

N.Y. C.P.L.R. § 215. ................................................................................................................18

New York Domestic Relations Law § 235(1) .........................................................................22

**RULES**

Fed. R. Civ. P. 12(f). ...............................................................................................................21

Defendant Amanda Goun respectfully submits this Memorandum of Law in support of her motion to dismiss the Amended Complaint ("Complaint") and, in the alternative, to strike all allegations that purport to characterize sealed materials from the parties' divorce proceeding.

## INTRODUCTION

This lawsuit is a vindictive attempt to punish a victim of domestic violence who had the courage to speak out about the abuse she had long suffered at the hands of her husband, Plaintiff Joseph K. Goldstein ("Plaintiff"). Plaintiff contends that his wife, Amanda Goun, violated his constitutional rights because she reported to law enforcement that Plaintiff had been violent with her and with her children. (Ms. Goun eventually emailed prosecutors telling them to dismiss the charges to protect her child from having to testify.) Except under certain circumstances not present here, however, victims who report crimes to authorities cannot be held liable for their actions under 42 U.S.C. § 1983, a statute that protects against abuses by state actors. Ms. Goun may be an Assistant District Attorney, but her job title does not transform her private conduct—reporting violence committed against her—into state action.

To shoehorn this spousal dispute into a civil rights action, Plaintiff has concocted a conspiracy between Ms. Goun and three different law enforcement agencies. In order for that type of claim to survive dismissal, the Complaint would have to plausibly allege that Ms. Goun, police officers, and prosecutors shared a "common goal" of violating Plaintiff's rights. Plaintiff's attempts to allege such a conspiracy come nowhere near the plausibility threshold because the Complaint alleges no facts from which the Court could reasonably infer the existence of an illicit agreement between Ms. Goun, the NYPD, the Manhattan District Attorney's Office, and the Bronx District Attorney's Office. To the contrary, the Complaint's own allegations make clear that multiple actors—NYPD Officer Carmen Fabian, NYPD Officer Rachel Lutz, Manhattan ADA

Lawrence Newman, Manhattan ADA Kelly Keating, and Bronx ADA Jennifer Esposito—each *independently* concluded that Plaintiff had committed several crimes. Those probable cause determinations were supported by evidence that corroborated Ms. Goun's accounts—Ms. Goun's cell phone video, body-worn camera footage, observation of Ms. Goun's injuries, and interviews with Ms. Goun's child. The independent judgment of these law enforcement actors not only belies any claim of conspiracy but also severs any causal connection between Ms. Goun's alleged misconduct and Plaintiff's alleged injuries—another reason why the Section 1983 claims fail.

Plaintiff's state law claims fare no better. Ms. Goun's conduct does not violate the New York Judiciary Law because the statute applies only to the conduct of attorneys acting in their capacity as attorneys. The claim for civil conspiracy is time-barred because the underlying torts are subject to a one-year statute of limitations. And the Court lacks supplemental jurisdiction over the other claims—which relate to Ms. Goun's alleged theft of "valuable electronic storage devices" days before the abuse at issue—because they are wholly unrelated to Plaintiff's federal claims.

Even if Plaintiff did state any claim for relief (and he hasn't), his claims should be adjudicated in New York Supreme Court, which has presided over the couple's divorce proceedings for the past three years. Plaintiff's overarching complaint is that he does not like how Ms. Goun's actions have affected his ongoing divorce case. Look no further than Plaintiff's allegations of economic injury and his requested damages. Plaintiff seeks to use this lawsuit to recoup expenses that he incurred only because the New York Supreme Court ordered them in divorce proceedings—the costs of his supervised visitation, the costs of children's therapy, the costs of a forensic evaluation, support payments to Ms. Goun, and fees paid to her divorce attorneys. The New York Supreme Court has jurisdiction over how these costs are allocated, routinely addresses spousal and custody disputes, and has access to private materials that have

been filed through the course of the parties' three-year divorce action, including issues about the treatment of their children. New York law treats this information as confidential so children are not harmed by public legal proceedings. The matrimonial court is the appropriate forum to fashion equitable relief that would "remediate [Plaintiff's] injuries and protect his children." Complaint ¶ 7. Plaintiff concedes that he is fully able to present Ms. Goun's alleged misconduct, and challenge the allocation of costs, *in those proceedings*. Granting Plaintiff's requested relief here would not only impermissibly intrude on state-court jurisdiction, but it would effectively permit Plaintiff to forum-shop his way to a (potentially) better outcome. This Court should not permit Plaintiff to use a federal lawsuit as a backdoor challenge to orders issued in matrimonial proceedings. Accordingly, this Court should dismiss the Complaint under the domestic-relations abstention doctrine. *See Deem v. DiMella-Deem*, 941 F.3d 618 (2d Cir. 2019).

In the alternative, Ms. Goun respectfully requests that the Court strike all allegations from the Complaint that purport to characterize the substance of confidential proceedings from the parties' matrimonial action, including a forensic evaluation report that is the subject of a strict non-disclosure order. Plaintiff's inclusion of those allegations violated a court order barring the disclosure of that report and New York law prohibiting the publication of material from divorce proceedings. Because Ms. Goun is subject to that same order and those same rules, she is unable to respond to Plaintiff's self-serving, inaccurate, and incomplete allegations about the report. Those allegations should be stricken pursuant to Rule 12(f).

## **LEGAL STANDARD**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

In determining whether a claim meets those standards, the Court must "accept all factual allegations as true, but give no effect to legal conclusions couched as factual allegations.'" *Stadnick v. Vivint Solar, Inc.*, 861 F.3d at 35 (2d Cir. 2017) (cleaned up). The Court must confine its analysis "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Israel Discount Bank of New York,* 199 F.3d 99, 107 (2d Cir. 1999) (cleaned up).

## ARGUMENT

### I.  THE COURT SHOULD DISMISS ALL FEDERAL CLAIMS BECAUSE THEY FAIL TO STATE A CLAIM FOR RELIEF

All of Plaintiff's federal claims against Ms. Goun—Abuse of Process, Malicious Prosecution, False Arrest, Evidence Fabrication, Conspiracy, and Infringement of the Right to Familial Association—must be dismissed because the Complaint fails to plausibly allege that Ms. Goun acted "under color of state law" *or* that her conduct was the proximate cause of Plaintiff's injuries. Each of those elements is "essential" to establishing liability under 42 U.S.C. § 1983. *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001) (color of state law); *see Gierlinger v. Gleason*, 160 F.3d 858, 872 (2d Cir. 1998) (proximate cause).

#### A.  Amanda Goun was a Victim, Not Acting Under Color of State Law

The Complaint makes clear that Ms. Goun's only involvement in Plaintiff's arrest and prosecution was as a victim who alerted authorities about abuse that she suffered herself. Plaintiff makes no allegation that Ms. Goun took any action in her capacity as an ADA.

Plaintiff instead alleges (in an apparent attempt to plead around prosecutorial immunity) that Ms. Goun acted "in a private capacity." Dkt. 21, Complaint ("Compl.") ¶¶ 497, 504, 515, 523.

In this case, that allegation dooms Plaintiff's Section 1983 claims. "To act under color of state law or authority for purposes of Section 1983, the defendant must have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Monsky v. Moraghan*, 127 F.3d 243, 245 (2d Cir. 1997) (cleaned up). It is "axiomatic" that "acts of officers in the ambit of their personal pursuits are plainly excluded." *Id.*

Plaintiff makes no allegation that Ms. Goun exercised any power afforded by her position as an ADA. Instead, Ms. Goun's alleged "misconduct" stems wholly from (1) statements she gave to police officers in her capacity as a victim and (2) representations she made to the divorce court in her capacity as a private litigant. Such "personal pursuits" only form the basis for Section 1983 liability under very limited circumstances that Plaintiff does not allege here, as described below.

Plaintiff is not the first scorned spouse who has attempted to seek refuge in federal court to avenge rulings made in a contested divorce. In *Betts v. Shearman*, Judge Oetken dismissed similar claims—brought by a husband who alleged that his ex-wife made false accusations resulting in his arrest and trial—because the ex-wife was not acting under color of state law. The Second Circuit affirmed, reiterating that a private citizen is liable under Section 1983 if that citizen "is a willful participant in joint activity with the state or its agents." *Betts v. Shearman*, 751 F.3d 78, 84 (2d Cir. 2014). A private actor engages in "joint activity" with the state only when "the two share some common goal to violate the plaintiff's rights." *Id.* "Where a … police officer exercises independent judgment in how to respond to a private party's legitimate request for assistance, the private party is not 'jointly engaged' in the officer's conduct." *Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d Cir. 1999). State action cannot be inferred absent evidence that state actors "undertook to resolve the dispute pursuant to [an] agreement or plan with" the private actor to deprive the plaintiff of his constitutional rights. *Id.*

Plaintiff's attempts to allege "joint activity" rest on an unsupported and implausible theory that Ms. Goun reached an agreement with numerous state actors to deprive Plaintiff of his constitutional rights. Plaintiff asks the Court to infer that Ms. Goun spearheaded a sprawling conspiracy, involving the NYPD, the Manhattan DA, and the Bronx DA, to maliciously prosecute an "innocent" man. In Plaintiff's telling, Ms. Goun convinced two different NYPD Officers—Defendants Rachel Lutz and Carmen Fabian—to knowingly bring false charges against her husband, even though there is no allegation that Lutz or Fabian had ever met Ms. Goun or Plaintiff before. As if that were not implausible enough, the Complaint also contends that Ms. Goun persuaded the Domestic Violence Chief at the Manhattan DA's Office, Lawrence Newman, to draft a felony complaint that he knew was based on fabricated allegations. The alleged conspiracy does not end there: Ms. Goun subsequently convinced two *different* attorneys—Manhattan ADA Kelly Keating and Bronx ADA Jennifer Esposito—to file knowingly false misdemeanor charges.

Plaintiff's Section 1983 claims require the Court to credit *all* the above allegations, and to infer that each of these state actors shared a "common goal" of violating his rights. *Betts*, 751 F.3d at 84. None of these purported agreements meet the plausibility test, for at least three reasons.

*First,* Plaintiff fails to plausibly allege that any of the four police officers involved in his arrest came to an agreement to arrest him without probable cause. As to the two (unnamed) officers who responded to Ms. Goun's 911 call of October 8, 2022, Plaintiff alleges that they were "influenced" by Ms. Goun's "invoking her authority" as an "ADA." Compl. ¶ 130. That claim of improper influence cannot be credited because it is contradicted by the allegation, *in the next paragraph*, that the responding officers stood by their initial conclusion that Plaintiff's conduct constituted harassment. *Id.* ¶ 131. Plaintiff later alleges that an additional police officer, Fabian, concluded that his conduct constituted third-degree assault *without speaking to Ms. Goun* (or

Newman). *Id.* ¶ 134. Fabian is alleged to have made that determination on two bases—conversations with the responding officers and viewing video of the incident. *Id.* In other words, the Complaint alleges that two responding officers reached one conclusion (harassment) and then ran that conclusion by their supervisor who reached a separate independent judgment (assault). Those allegations bely any claim of improper influence by Ms. Goun.

With respect to Lutz, the police officer who activated the "Probable Cause iCard" for felony assault against Plaintiff, Compl. ¶ 178, the only allegation of Ms. Goun's "influence" is her provision of information in her capacity as a victim. All allegations of Ms. Goun's interactions with Lutz are consistent with the behavior of a private citizen making a complaint against her abusive husband. *See id.* ¶¶ 155-236. Plaintiff does not allege that Ms. Goun ever told Lutz that she was an ADA, let alone attempted to leverage that position to exert influence. The Complaint instead alleges that Lutz reached her initial conclusion—that Plaintiff had committed a felony—after interviewing Ms. Goun, watching video footage (including the cell phone video), and observing Ms. Goun's injuries. *Id.* ¶¶ 155-173. According to Plaintiff, Lutz determined that she had probable cause to arrest him for a crime on October 9, 2022, when she authorized his arrest. *Id.* ¶ 178. Crucially, Lutz did so *before* she ever spoke with Newman. The only allegation about any contact between Lutz and Newman is a text message from October 11, 2022, in which Lutz represents that she's "in touch with Larry Newman." *Id.* ¶ 204. Far from being suspect, it is proper procedure for the police officer who has authorized an arrest for a domestic violence charge to contact the prosecutor who leads the domestic violence unit. More importantly, the alleged contact with Newman occurred two days *after* Lutz had authorized Plaintiff's arrest on felony charges. None of these allegations permit an inference that Lutz agreed to pursue false charges.

In sum, Plaintiff fails to allege any *facts* to support an inference that Ms. Goun hatched a plan with any of the police officers who determined that Plaintiff committed a crime. Nor is there any allegation of motive. Why would Fabian and Lutz join in a plan to violate Plaintiff's rights? Why would each do so independently of one another? The Complaint provides no answer to those questions. Without any plausible allegation that "the police officers were improperly influenced or controlled by" Ms. Goun, her alleged "misconduct" consisted only of "providing information to law enforcement," which is insufficient as a matter of law *even if* "that information is false." *Palmer v. City of New York*, 564 F. Supp. 3d 221, 243 (E.D.N.Y. 2021).

*Second*, and for substantially similar reasons, Plaintiff fails to plausibly allege any illicit agreement between Ms. Goun and Newman. According to Plaintiff, the purportedly "corrupt" conversation on October 8, 2022 consisted of the following: Newman asked questions about the incident, and about the couple's history, and Ms. Goun responded to those questions. Compl. ¶ 125. Ms. Goun then asked Newman whether the conduct she described constituted a crime and sought advice about how to fill out a domestic incident report. *Id.* ¶¶ 139-141. In other words, Ms. Goun called a prosecutor with expertise in domestic violence cases to discuss her complaint of domestic violence. None of those allegations permit an inference of "corrupt[ion]," *id.* ¶ 3. There is no allegation that Newman instructed Ms. Goun to make false representations in the domestic incident report,[1] that Newman reached any agreement with Ms. Goun to fabricate charges, or that Newman had any motivation to violate the rights of Plaintiff, a person he apparently did not know. The only allegation about Newman's alleged motive in conspiring with Ms. Goun was that the two

---

[1] Instead, the Amended Complaint alleges that Ms. Goun's statements to Lutz the following day were "inconsistent" with her prior statements in the domestic incident report, Compl. ¶ 163, belying any implication that Newman coached Ms. Goun on how to fabricate an arrestable offense on October 8, 2022.

were "friends." *Id.* ¶ 249. Without any plausible motivation for Newman to send an (allegedly) innocent man to jail, the Complaint rests entirely on conjecture.

Moreover, the Complaint contains no factual allegations to infer that Newman even *knew* that Ms. Goun was involved in divorce proceedings with Plaintiff. Plaintiff does not allege that Ms. Goun told Newman about those proceedings during their October 8, 2022 conversation, even though the "entirety of the conversation between [] Newman and Goun was within earshot of the responding officers" and "captured on the responding officers' body-worn cameras." Compl. ¶¶ 124, 126. There is no factual support for the conclusory allegation that Newman knew that the "sole purpose of filing the Felony Complaint was to … provide benefits in [Ms. Goun's] divorce proceedings." *Id.* ¶ 257. In fact, the Complaint makes no allegation that Ms. Goun discussed divorce or custody proceedings with any state actor who allegedly agreed to conspire with her.

This absence of motive renders wholly implausible the contention that multiple police officers and prosecutors came together in a grand conspiracy—sharing a "common goal" with Ms. Goun—to maliciously prosecute Plaintiff. *Betts*, 751 F.3d at 84. Plaintiff alleges no facts that would support a concerted plan between these parties. The Complaint alleges only that Ms. Goun "regularly interact[ed]" with state actors in her capacity as a complainant, which does not suffice to "create an inference of agreement to violate a plaintiff's rights." *Fisk v. Letterman*, 401 F. Supp. 2d 362, 377 (S.D.N.Y. 2005) (internal citations omitted).

*Third,* Plaintiff fails to plausibly allege any illicit agreement between Ms. Goun and the Bronx DA's Office, the third law-enforcement agency that authorized criminal charges against Plaintiff. The Complaint instead alleges that the Bronx DA's office decided to prosecute Plaintiff on *different* charges, and that the decision was made independently of Ms. Goun and Newman. Plaintiff's attempt to implicate the Bronx DA in this multi-level conspiracy rests on a single

allegation that Newman was "present in the courtroom" at a status call and "spoke to ADA Esposito." Compl. ¶ 301. That allegation does not suffice to raise an inference of conspiracy or improper influence given the Bronx DA's subsequent decision, four months after that status call, to prosecute Plaintiff for different crimes. *Id.* ¶ 305. Plaintiff makes no allegation that Ms. Goun or Newman played any role in *that* decision.

The Complaint contains only one allegation of a connection between the authorization of misdemeanor charges and the alleged conspiracy: a conclusory statement, made "on information and belief," that a third prosecutor, Kelly Keating, took the administrative acts of preparing and filing that information "in coordination and agreement" with Newman and Ms. Goun. *Id.* ¶ 310. That contention falls far short of clearing Rule 8 pleading standards because Plaintiff alleges no facts about Keating's role in the conspiracy, Keating's motive for participation, or any connection between Keating and Ms. Goun (or Newman). *See* Compl. ¶¶ 14, 308, 310, 316, 317 (all allegations referencing Keating in the "Statement of Facts"). The Complaint contains no facts that support an inference that Ms. Goun reached an agreement with, or exerted improper influence over, the Bronx DA's office—the entity that actually prosecuted Plaintiff. Any such inference is belied by the Bronx DA's decision to drop the original charges and proceed with new ones.

Finally, the Complaint does not plausibly allege that Ms. Goun "affirmatively induced" any law enforcement officers to arrest or prosecute Plaintiff "to the point where the officer [was] not acting of his own volition." *Curley v. AMR Corp.,* 153 F.3d 5, 14 (2d Cir. 1998). The limited circumstances in which the inducement exception applies are exemplified by a district court case, *Weintraub v. Bd. of Educ. of City of New York*, 423 F. Supp. 2d 38 (E.D.N.Y. 2006). *Weintraub* involved an alleged conspiracy among three defendants—a teacher, a principal, and an assistant principal—to have the plaintiff-teacher arrested on assault charges and subsequently terminated

from the school. All three defendants had previously engaged in a "pattern of filing unsubstantiated charges against" the plaintiff. *Id.* at 56. Those defendants were alleged to have misled the police, who arrested the plaintiff based *only* on their recounting of events. *Id.* at 46. Under such limited circumstances where the defendants provided virtually all the evidence to the police, who then acted on this information, a Section 1983 claim was proper.

The facts here are completely distinct from *Weintraub.* Here, there is no allegation that Ms. Goun had ever reported Plaintiff to law enforcement before she called 911 on October 8, 2022. And Ms. Goun is not alleged to have "misled" anyone. Plaintiff instead claims that Defendants were engaged in a conspiracy to prosecute him for "crimes they knew he did not commit." Compl. ¶ 518. More importantly, there is no allegation that Ms. Goun ever told the two arresting officers that she wanted Plaintiff to be arrested, let alone that she induced any law enforcement actor to act on such a desire. The Complaint alleges that Fabian "authorized and pursued the arrest and prosecution of Mr. Goldstein" "*without speaking to Defendant Goun.*" Compl. ¶ 134 (emphasis added). As to Lutz, the Complaint alleges no *facts* that Ms. Goun induced her to make an arrest— Ms. Goun merely provided information and asked her about the status of the case. *See id.* ¶¶ 155-236. Plaintiff's claim of inducement hinges on one conclusory allegation, made on information and belief, that Ms. Goun "pressed" Lutz to pursue charges. *Id.* ¶ 176. But those officers' probable charge determinations did not hinge on Ms. Goun's recounting of events. Both Fabian and Lutz reviewed independent evidence, including video recordings of the event in question. *Id.* ¶¶ 133-134 (Fabian); *id.* ¶ 159 (Lutz). The facts here bely any claim of inducement.

Plaintiff's failure to plausibly allege "joint activity" between Ms. Goun and state actors requires the Court to rule, as a matter of law, that Ms. Goun did not act under color of state law. *See Fiedler v. Incandela*, 222 F. Supp. 3d 141, 157 (E.D.N.Y. 2016) (holding that the issue of

whether defendant acted "under color of law or as a state actor is a question of law for the court");

*Vega v. Fox*, 457 F. Supp. 2d 172, 181 (S.D.N.Y. 2006) (same). That failure to plausibly allege

state action requires dismissal of *all six* claims brought against Ms. Goun under 42 U.S.C. § 1983.

### B.    The Independent Judgment of Multiple Police Officers and Prosecutors Are Intervening Events Fatal to Plaintiff's Claims

Plaintiff's Section 1983 claims fail for an additional, related, reason: the independent

judgment of multiple police officers and prosecutors to pursue criminal charges against Plaintiff

severs any causal connection between Ms. Goun's alleged actions and Plaintiff's alleged injuries.

The failure to adequately plead causation, like the failure to plead "joint activity," requires

dismissal of all federal claims. *See Gierlinger*, 160 F.3d at 872.

In the Second Circuit, the "chain of causation" between an "unlawful arrest" and

subsequent prosecution "is broken by the intervening exercise of independent judgment … in the

absence of evidence that the [defendant] misled or pressured the official who could be expected to

exercise independent judgment." *Townes v. City of New York*, 176 F.3d 138, 147 (2d Cir. 1999)

(dismissing § 1983 claim for unreasonable search and seizure); *see also Bermudez v. City of New

York*, 2014 WL 11274759, at *8 (S.D.N.Y. Mar. 25, 2014) (dismissing § 1983 claims alleging

fabrication of evidence and malicious prosecution because plaintiff "puts forth no evidence that

the Officer Defendants misled or pressured [the] ADA [] into filing charges against Plaintiff").

Here, Plaintiff not only fails to explain how Ms. Goun pressured multiple police officers

(Lutz and Fabian) and multiple prosecutors (Keating and Esposito) to falsely incriminate him, he

also concedes that *each* of these actors made an independent decision to prosecute him.

The clearest indication that each state actor independently decided to prosecute Plaintiff is

the fact that each reached a different conclusion about the offenses that he committed. The

responding officers concluded that Plaintiff committed the (non-arrestable) offense of harassment,

even after Newman and Ms. Goun allegedly "invo[ked]" their authority as ADAs. Compl. ¶ 131. Fabian concluded that Plaintiff committed misdemeanor assault before speaking with Ms. Goun. *Id.* ¶¶ 133-134. Lutz concluded that Plaintiff committed felony assault based on a review of bodycam footage, an interview with Ms. Goun (the complaining witness), and observation of her injuries. *Id.* ¶¶ 160-165, 178. Plaintiff makes no allegation that Lutz so much as spoke to Newman or Fabian before she reached that decision. The Bronx DA's office, "after having the case for more than four months," decided that Plaintiff's conduct rose to the level of misdemeanor assault. *Id.* ¶ 305. Again, there is no allegation that Ms. Goun, or any other Defendant, played any role in that decision. In fact, the Bronx DA's office reached another independent conclusion, three months later, to cease prosecution of Plaintiff. *Id.* ¶ 336. There is no allegation that Ms. Goun pressured any of these decisionmakers to deviate from their independent judgment or had the requisite influence to do so. It strains credulity to suggest that these independent actors could have been "misled" into initiating prosecution by Ms. Goun's allegedly false statements because each actor had corroborating evidence to review, namely video footage from two different sources.[2]

Each of these independent conclusions—by Lutz, Fabian, and the Bronx DA's office—that Plaintiff should be prosecuted, is fatal to Plaintiff's claim that Ms. Goun's conduct was the proximate cause of his injuries. The federal claims should be dismissed on that basis alone.

## II. THE COURT SHOULD DISMISS THE FEDERAL CLAIMS UNDER THE DOMESTIC RELATIONS ABSTENTION DOCTRINE

Whether or not Plaintiff's federal claims survive Rule 12(b)(6) (they don't), the Court should decline jurisdiction over this case based on the domestic relations abstention doctrine. Plaintiff may couch his claims for relief as seeking compensatory damages for constitutional torts. The allegations make clear, however, that the gravamen of the Complaint is a domestic dispute,

---

[2] Moreover, Plaintiff does not allege that Ms. Goun misled any state actors. *See supra,* at 10-11.

whose purpose is relitigate court orders from *still-pending* divorce proceedings. Plaintiff's true purpose is laid bare by his alleged economic injuries. Nearly all are attributable to expenses that were ordered by the New York Supreme Court in divorce proceedings: the "costs of supervised visitation of his children"; the "costs of a forensic evaluator;" "cost for the AFC [Attorney for the Children];" "fees and costs paid to Defendant Goun's attorneys;" and "inflated interim support payments to Defendant Goun." Compl. ¶ 466.[3] Plaintiff is inappropriately using Section 1983 claims to escape having to pay costs already ordered to be paid by a state court. Federal courts routinely abstain from such cases where the parties are spouses, and the requested relief would intrude upon divorce proceedings in state court.

Federal jurisdiction should not be exercised over a matrimonial dispute rewritten as a tort claim for money damages. The Supreme Court has long recognized a "domestic relations exception" to subject matter jurisdiction that "divests the federal courts of power to issue divorce, alimony, and child custody decrees." *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992). Independent of that exception, "[a] federal court presented with matrimonial issues or issues on the verge of being matrimonial in nature should abstain from exercising jurisdiction so long as there is no obstacle to their full and fair determination in state courts." *Deem,* 941 F.3d at 621–22.

This case meets both prongs of the *Deem* test for abstention. In *Deem*, the plaintiff husband filed a federal lawsuit against his wife and others alleging a conspiracy "to maliciously prosecute him and to violate his right to intimate association with his children" in violation of Section 1983 and New York state law. 941 F.3d at 620. The husband alleged that he was injured by a temporary

---

[3] Plaintiff also dedicates significant portions of the Complaint to allegations that Ms. Goun committed misconduct in the divorce proceedings long after the criminal charges against him were dropped in June 2023. *See* Compl. ¶¶ 396, 406-427, 434-444, 446-454. None of those allegations can have any possible bearing on his Section 1983 claims and are merely included to thwart the confidentiality rules in the matrimonial proceeding.

protection order, issued by a family court judge, that prohibited any contact between him and his children. The district court dismissed the claims under the domestic-relations abstention doctrine. The Second Circuit affirmed because plaintiff's claims were "on the verge of being matrimonial in nature" and "capable of being fairly resolved in state court." *Id.* at 625. *See also Keane v. Keane*, 549 F. App'x 54, 55 (2d Cir. 2014) (affirming application of domestic relations abstention in action seeking damages for fraud allegedly committed during divorce proceedings)*; Dowlah v. Dowlah*, 2010 WL 889292, at *5 (E.D.N.Y. Mar. 10, 2010) (declining to exercise jurisdiction over "federal civil rights action" filed by husband alleging that wife "manufactured and falsified evidence" to the Family Court" and "coach[ed] and coerc[ed] the [] children to lie in Family Court").

Plaintiff's allegations against Ms. Goun, like the cases cited above, are inextricably intertwined with the divorce proceedings and thus "cannot be separated from their marriage disputes." *Keane v. Keane*, 2012 WL 6582380, at *3 (S.D.N.Y. Dec. 17, 2012), *aff'd*, 549 F. App'x 54 (2d Cir. 2014). Plaintiff repeatedly alleges that the motivation for Ms. Goun's purported misconduct was securing an advantage in divorce proceedings. The very first paragraph of the Complaint states that the "purpose" of the purported scheme was "to help Defendant Goun obtain valuable benefits in her pending divorce case against Mr. Goldstein." Compl. ¶ 1. *See also id.* ¶¶ 6, 472. By "tangible benefits," Plaintiff means unfavorable results from the divorce proceedings— *i.e.*, orders from the New York Supreme Court. *See id.* ¶ 4 (alleging that the New York Supreme Court granted Ms. Goun "substantial sums of money in interim support and attorney's fees on the basis of the false charges"); *id.* ¶ 466 (same). Because Plaintiff's alleged "injuries" are indistinct from the divorce court's interim orders, this Court cannot fashion any relief for those injuries without trammeling on state court jurisdiction. *See Donohue v. Pataki*, 28 F. App'x 59, 60 (2d Cir.

2002) (affirming "district court's conclusion that it lacked jurisdiction to invalidate or otherwise review the state court's decision [regarding] ... child support payments").

Abstention is appropriate even though Plaintiff does not seek to overturn any state-court order *directly*. *See Zappin v. Comfort*, 2024 WL 5001624, at *2 (2d Cir. Dec. 6, 2024) (affirming district court's exercise of domestic relations abstention even though plaintiff sought "only tort damages"); *Evans v. Adams*, 714 F. Supp. 3d 119, 124 (E.D.N.Y. 2024) ("Though Evans frames his allegations in constitutional terms, his requested relief as a practical matter would have this Court review and overturn Justice Adams's decisions in the underlying state court action."). Here, an award of economic damages to Plaintiff would necessarily invalidate state court orders.

Moreover, Plaintiff retains the ability to challenge these orders in that same state court. All the state court orders on custody, support payments, and allocation of costs are interim in nature because divorce proceedings remain pending. The Complaint alleges no reason why Plaintiff cannot raise all his claims in these proceedings, now. *See Evans,* 714 F. Supp. 3d at 125 (abstaining from proceeding because plaintiff had not "plausibly alleged any obstacle impeding the full and fair determination of his state court action"). The couple's divorce proceedings are not in family court but in New York Supreme Court, a court of general jurisdiction. *See Haywood v. Drown*, 556 U.S. 729, 739–41 (2009) (explaining that as courts of general jurisdiction, the New York Supreme Courts may properly hear suits for damages under § 1983). Plaintiff concedes that there is no impediment preventing him from presenting Ms. Goun's alleged misconduct to the Justice presiding over the divorce action. *See* Compl. ¶¶ 445-454 (alleging that New York Supreme Court has adjusted child-custody determinations and allocation of costs in light of the conduct alleged in the Complaint). Because "there is no obstacle to the[] full and fair determination" of Plaintiff's

claims in "state court[]," the Court should abstain from exercising jurisdiction. *Deem*, 941 F.3d at 621–22 (cleaned up).

## III.   THE STATE LAW CLAIMS FOR ALLEGED OFFICIAL MISCONDUCT FAIL TO STATE A CLAIM FOR RELIEF

### A.    Plaintiff's Section 487 Claim is Frivolous Because Defendant Goun Was Not an Attorney in the Criminal Court Proceedings

Plaintiff's claim for violation of New York Judiciary Law Section 487, must be dismissed because there is no allegation that Ms. Goun acted as an attorney in the criminal proceeding.

A Section 487 claim applies only to attorneys *acting as attorneys*, not to private litigants who happen to be lawyers. *See Tacopina v. Kerik*, 2016 WL 1268268, at *5 (S.D.N.Y. Mar. 31, 2016) (dismissing Section 487 claim against an attorney acting as a party and collecting cases); *People v. Canale*, 658 N.Y.S.2d 715, 717 (3d Dep't 1997) ("[C]ourts have generally held that [Section 487] is limited to actions by an attorney acting in his or her capacity as an attorney and that the mere fact that a wrongdoer is an attorney is insufficient to impose liability."). Here, Ms. Goun was not even a party to the litigation in which the alleged wrongdoing took place. She was a victim. None of Ms. Goun's conduct *in that capacity* is subject to liability under Section 487. As the New York Court of Appeals has stated, "[t]he purpose of Judiciary Law § 487(1) is to safeguard an attorney's special obligation of honesty and fair dealing in the course of litigation." *Bill Birds, Inc. v. Stein L. Firm, P.C.*, 35 N.Y.3d 173, 178 (2020) (affirming dismissal of claim because alleged fraud did not occur "in the context of an action pending in court"). Ms. Goun has located no precedent for applying the Judiciary Law to complaining witnesses who happen to be lawyers.

Plaintiff's Judiciary Law claim fails for an additional reason: Section 487 applies only to "false statements by lawyers during litigation" and "does not encompass the filing of a pleading or brief containing nonmeritorious legal arguments," nor pre-suit conduct to bring an unnecessary action. *Bill Birds,* 35 N.Y.3d at 180. Plaintiff makes no allegation that Ms. Goun made any false

statements, or had any involvement whatsoever, in the litigation of criminal charges by the Bronx

DA's office. All the alleged wrongdoing stems from the decision to prosecute Plaintiff in the first

place, or false statements made in criminal complaints. Those kinds of falsities, even if true, cannot

form the basis for liability under the Judiciary Law. *See Seagrape Invs. LLC v. Tuzman*, 2020 WL

5751232, at *24 (S.D.N.Y. Sept. 25, 2020) ("Courts have also held that an assertion of unfounded

allegations in a pleading, even if made for improper purposes, does not provide a basis for liability

under Section 487."). Plaintiff's Section 487 claim is frivolous and should be dismissed.

### B. Plaintiff's Claim for State Law Conspiracy Fails Because New York Does Not Recognize Civil Conspiracy as an Independent Tort and, in any event, the Claim is Time-Barred

Plaintiff's claim for state law conspiracy should be dismissed on the merits for the same

reason as his Section 1983 claims—for failure to plausibly allege an agreement to commit false

arrest or malicious prosecution. *See supra* at 6-9.

The claim should be also dismissed because both underlying substantive torts are untimely.

Under New York law, "conspiracy is not an independent tort, and is time-barred when the

substantive tort underlying it is time-barred." *Schlotthauer v. Sanders*, 153 A.D.2d 731, 732 (2d

Dep't 1989); *accord Powell v. Lab Corp*., 789 F. App'x 237, 241 n.4 (2d Cir. 2019); *Kottler v.*

*Deutsche Bank AG*, 607 F. Supp. 2d 447, 461 (S.D.N.Y. 2009). In fact, proof of the underlying

"primary tort" is a threshold element of any claim for civil conspiracy. *Cohen Bros. Realty Corp.*

*v. Mapes*, 181 A.D.3d 401, 404 (1st Dep't 2020). Plaintiff's state-law conspiracy claim is based

on two "primary" torts: false arrest and malicious prosecution. *See* Compl. ¶ 526. Each is subject

to a one-year statute of limitations. N.Y. C.P.L.R. § 215(3). Plaintiff's state conspiracy claim thus

accrued, at the very latest, on June 14, 2023, when the criminal charges against him were dropped.

*See* Compl. ¶¶ 379-381; *Bumbury v. City of New York*, 880 N.Y.S.2d 44, 45 (1st Dep't 2009) ("A

cause of action for malicious prosecution accrues when the criminal proceeding terminates favorably to the plaintiff"); *see also Williams v. CVS Pharmacy, Inc.*, 6 N.Y.S.3d 78, 79 (2d Dep't 2015) ("Causes of action based on false arrest accrue upon the subject's release from confinement" (cleaned up)). Because Plaintiff filed the state law conspiracy count on May 16, 2025, well after the expiration of the limitations period, it should be dismissed as untimely.

## IV.   THE COURT LACKS JURISDICTION OVER THE STATE LAW THEFT CLAIMS

Dismissal of Plaintiff's federal claims should prompt the Court to dismiss *all* of Plaintiff's state law claims for lack of jurisdiction. *See* 28 U.S.C. § 1367(c)(3) ("[D]istrict courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction ...."); *One Commc'ns Corp. v. JP Morgan SBIC LLC*, 381 F. App'x 75, 82 (2d Cir. 2010) ("If all of a plaintiff's federal claims are dismissed, a district court is well within its discretion to decline to assert supplemental jurisdiction over any state law claims ...."). That course of action would be especially prudent here, as the case is in its infancy and no discovery has been taken. *See Lewis v. Pelham Country Club*, 2024 WL 4275588, at *9 (S.D.N.Y. Sept. 24, 2024) (dismissing state claims after federal claims were dismissed on a 12(b)(6) motion).

Regardless, the Court lacks any jurisdiction over Counts Eleven, Twelve, and Thirteen because they bear no relation to Plaintiff's federal claims. Federal courts have supplemental jurisdiction over state law claims only when they "are so related to claims" over which the court has original jurisdiction "that they form part of the same case or controversy." 28 U.S.C. § 1367(a). The "same case or controversy" requirement is met when "the facts underlying the federal and state claims substantially overlapped ... [or] the federal claim necessarily brought the facts underlying the state claim before the court." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006). Put differently, federal courts have jurisdiction only over state claims that "derive from a common nucleus of operative fact" as the federal claims "such that [a plaintiff]

would ordinarily be expected to try them all in one judicial proceeding." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).

Plaintiff's state-law claims for trespass to chattel, conversion, and replevin fail either test because they rely on allegations of theft that are distinct from the claims of abuse of the criminal process that underlie Counts One through Ten. The federal claims concern the prosecution of Plaintiff based on Ms. Goun's complaints of domestic violence. The state claims concern conduct—the alleged theft of "valuable electronic storage devices"—that began and ended days before. That alleged theft had no bearing on the prosecution of Plaintiff, and the Complaint does not contend otherwise. Plaintiff's ability to prove the federal claims doesn't depend, in any way, on whether Ms. Goun took property from Plaintiff's apartment. All the conduct underlying Counts Eleven through Thirteen took place on October 5, 2022. The events that gave rise to the prosecution began on October 8, 2022 and concern an entirely separate incident—Plaintiff s assault of Ms. Goun, and abuse of his children. Because there is no factual overlap between the two categories of claims, trial in this Action would require the Court to adjudicate two separate bodies of evidence. The "possibility of any evidentiary overlap" between the state and federal claims is "remote" (at best). *City of Almaty, Kazakhstan v. Ablyazov*, 2021 WL 1180058, at *5 (S.D.N.Y. Mar. 29, 2021). *See also Wigand v. Flo–Tek, Inc.,* 609 F.2d 1028, 1033 (2d Cir. 1979) (reversing district court's exercise of jurisdiction where federal claim rested on events prior to a contract's effective date while state law claim rested on events occurring after that date). These claims should be dismissed.

Plaintiff attempts but fails to connect these disparate claims. The Complaint alleges (1) that the argument that precipitated Plaintiff's assault of Ms. Goun on October 8, 2022 was about "the burglary," Compl. ¶¶ 76-87, and (2) that Ms. Goun used the "criminal process to try to avoid accountability for her own criminal conduct" (referring to the alleged theft), *id.* ¶ 473; *see id.*

¶¶ 70-73. The first allegation is demonstrably false: *both* the domestic incident report *and* Ms. Goun's recording of the incident make clear that the October 8, 2022 argument concerned Plaintiff acting aggressively towards her during a playdate earlier that day. *See* Ex. 1.[4] As to the second allegation, there is no factual support that Ms. Goun's complaints to the authorities were motivated by the alleged "burglary." That motivation is implausible because Plaintiff does not allege that he ever sought to hold Ms. Goun criminally accountable for entering his apartment.

In any case, crediting both allegations would not render the purported theft the same "case or controversy" as Plaintiff's criminal prosecution. Proving that Ms. Goun stole "storage devices" from Plaintiff would not help him establish liability for malicious prosecution, or false arrest, or any other federal claim. Judge Caproni's decision in *MDB LLC v. Hussain* is instructive here. 2016 WL 1267793 (S.D.N.Y. Mar. 29, 2016). In *MDB LLC*, the defendant brought a federal counterclaim alleging damages from a trademark violation that occurred after dissolution of the parties' business relationship. The court lacked jurisdiction over state law counterclaims that were "based on the parties' agreements and negotiations regarding compensation and profit-sharing prior to dissolution" because the claims arose out of "essentially unrelated facts." *Id.* at *12. There is no basis for supplemental jurisdiction here for the same reasons.

## V. THE COURT SHOULD STRIKE ALL ALLEGATIONS THAT DISCLOSE THE MATRIMONIAL PROCEEDINGS AND FORENSIC REPORT

If the Court declines to dismiss the Complaint, it should strike all allegations that reference the ongoing matrimonial proceeding, including the highly confidential forensic evaluation report issued in the parties' still active matrimonial case.

---

[4] The Court can consider the domestic incident report in deciding this motion because it is "incorporated in the complaint by reference." *Leonard F.* 199 F.3d at 107. *See* Compl. ¶¶ 141, 151, 163, 169 (references to the content of the domestic incident report).

Rule 12(f) permits the Court to "strike from a pleading ... any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "'Immaterial' matter is that which has no essential or important relationship to the claim for relief, and 'impertinent' materials consist of statements that do not pertain to, and are not necessary to resolve, the disputed issues." *Wood v. Mike Bloomberg 2020, Inc.*, 2024 WL 3861828, at *2 (S.D.N.Y. Aug. 19, 2024) (cleaned up). A court may also grant a motion to strike privileged material to prevent such material from being disclosed. *See, e.g.*, *Wellnx Life Scis. Inc. v. Iovate Health Scis. Research Inc.*, No. 1:06-cv-07785-PKC (S.D.N.Y. Aug. 13, 2007), Dkt. 54 (granting motion to strike privileged material from opposition to motion to dismiss). "To prevail on a Rule 12(f) motion to strike, the movant must show (1) no evidence in support of the allegations would be admissible; (2) the allegations have no bearing on the relevant issues; and (3) permitting the allegations to stand would result in prejudice to the movant.'" *Crosby v. Stew Leonard's Yonkers LLC*, 695 F. Supp. 3d 551, 559 (S.D.N.Y. 2023) (cleaned up).

New York law treats matrimonial proceedings with a high degree of confidentiality. New York Domestic Relations Law § 235(1) prohibits an officer of the court in a matrimonial action from permitting the copying "of any of the pleadings, affidavits, findings of fact, conclusions of law … testimony, or any examination or perusal thereof, to be taken by any other person than a party, or the attorney or counsel of a party, except by order of the court."

As the very same judge who was presiding over Plaintiff's still ongoing matrimonial action—Justice Ariel Chesler—recently recognized, New York law "manifests a clear legislative design that those proceedings be kept secret and confidential." *M.D.S. v. E.W.*, 214 N.Y.S.3d 671 (Sup. Ct. 2024) (quoting *Shiles v. News Syndicate Co.,* 27 N.Y.2d 9, 14 (1970)). "The attention given to confidentiality in matrimonial proceedings, especially those where issues of custody is at

issue, is because the intimate nature of family law proceedings." *Id.* (granting restraining order prohibiting mother from publicly disclosing information obtained from matrimonial action). Courts in New York keep matrimonial proceedings confidential in light of "the effect it would have on children of the marriage." *Lisa C.-R. v. William R.*, 635 N.Y.S.2d 449, 452 (Sup. Ct. 1995). "While adult parties in today's media-conscious world may be found to have no valid objection to having their dirty linen aired, the same cannot be said of the children who are the innocent victims of both their parents and the media." *Id.*[5]

The Complaint is replete with inappropriate, confidential information pertaining to Plaintiff's and Ms. Goun's ongoing custody dispute pending in New York Supreme Court, including allegations that publicize information pertaining to Ms. Goun's children, in contravention of New York's confidential treatment of such proceedings. This is especially true of the allegations characterizing the forensic evaluator's report. In 2023, Judge Chesler appointed a forensic evaluator and ordered that the forensic report would be disseminated only to counsel, and only after the matrimonial attorney submitted an affirmation setting forth how the forensic report would be handled. That affirmation was titled an "Affirmation of Nondisclosure of Forensic Report," in which the attorney of record in the matrimonial action agreed to: (a) print a single copy of the report, and delete the transmission email; (b) refrain from copying the report without the court's explicit direction; (c) not give a copy to any parent nor to permit a parent to make a copy or leave the premises with the single copy; and (d) to not quote any language from the report in any papers or other documents submitted to the court or to a parent. *See* Ex. 2.[6]

---

[5] That is precisely why Ms. Goun emailed the Bronx DA to warn that continuing the prosecution of Plaintiff would risk her child's mental health.

[6] The Court may take judicial notice of that order. "[C]ourts in the Second Circuit regularly take judicial notice of decisions and orders issued by other courts." *Simeone v. T. Marzetti Co.*, 2023

The allegations concerning the parties' ongoing matrimonial proceeding should be stricken. *First*, the forensic examination report is neither discoverable nor admissible because it is subject to a non-disclosure order in the matrimonial proceeding—even Plaintiff himself is not supposed to have a copy of it. *See id*. And the other papers submitted confidentially in the matrimonial action are supposed to be treated confidentially under New York law absent an order from the matrimonial court permitting their disclosure.

For example, in *Lipsky v. Commonwealth United Corp*., 551 F.2d 887 (2d Cir. 1976), a Second Circuit case addressing a Rule 12(f) motion premised on inadmissibility, the complaint at issue contained allegations regarding a previous SEC complaint against the defendant, which had culminated in a consent decree. The consent decree would have been inadmissible at trial. The district court granted the defendant's motion to strike the allegations regarding the SEC action as "impertinent and immaterial," and the Second Circuit affirmed. *Id*. at 892-94 (quotation omitted). The Court should do the same here, especially because Ms. Goun's litigation counsel are not even permitted to view the report.

*Second,* even if the forensic report and papers filed in the matrimonial action were admissible, none of those papers bear on any of Plaintiff's claims for relief. As discussed above, matrimonial disputes are not appropriately heard in federal courts. The parties' ongoing disputes do not bear on the threshold question of whether the state defendants had probable cause to believe that Plaintiff committed crimes against his children or his wife in October 2022. There are no allegations in the Complaint suggesting that any of the state defendants played any part in the matrimonial action. The allegations should be struck. *See Kounitz v. Slaatten,* 901 F. Supp. 650,

---

WL 2665444, at *2 (S.D.N.Y. Mar. 28, 2023) (taking judicial notice of "several rulings and orders" from state-court proceeding).

658 (S.D.N.Y.1995) (granting motion to strike allegations concerning defendant's "alleged use of profanity and professional demands on her staff" as "immaterial and impertinent as well as inflammatory and scandalous" because they "ha[d] no bearing on whether [plaintiff] was discriminated against on the basis of her gender").

*Third,* permitting these allegations to stand would prejudice Ms. Goun and her children. The Complaint is a publicly filed document that contains numerous allegations about the parties' children—including Plaintiff accusing his children about lying about his abuse of them. This gross misuse of the court system is precisely what the New York legislature has tried to stop by requiring that matrimonial proceedings—especially those involving children—remain confidential. To permit Plaintiff to thwart these rules by allowing him to maintain immaterial allegations in the Complaint will prejudice not only the parties' children, but also Ms. Goun. Ms. Goun is now forced to forgo the confidentiality protections afforded to litigants who get divorced in New York. This is particularly true of the matrimonial court's forensic report. Ms. Goun is not allowed to have a copy of that report, nor can she quote from it in any court proceeding. Her litigation counsel cannot even review it. The non-disclosure order prevents her from mounting any substantive response to the allegations about the forensic report and fix Plaintiff's mischaracterizations of it.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court dismiss the Complaint in its entirety. In the alternative, Defendant requests that the Court strike all allegations that purport to characterize the parties' ongoing confidential matrimonial proceedings.

Dated: September 1, 2025

Respectfully submitted,

*/s/ Eric S. Rosen*
**DYNAMIS LLP**
Eric S. Rosen
Jamie Hoxie Solano
Tyler Finn
11 Park Place, 4th Floor
New York, New York 10007
Tel: (617) 802-9157
erosen@dynamisllp.com
jsolano@dynamisllp.com
tfinn@dynamisllp.com

Rena Paul
The Paul Firm
347 Fifth Avenue, Suite 1402-496
New York, NY 10016
(917) 994-2693
rena@thepaulfirm.com

*Attorneys for Defendant Amanda Goun*

**CERTIFICATE OF SERVICE**

I certify that on September 1, 2025, I caused the foregoing brief to be served upon all Filing

Users through the Court's Case Management/Electronic Case Files ("CM/ECF") system.

*/s/ Eric Rosen*
Eric Rosen

## CERTIFICATE OF COMPLIANCE

I certify that this memorandum of law contains 8,348 words and complies with the word-length limitations in Local Rule 7.1(c).

*/s/ Eric Rosen*
Eric Rosen