**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JOSEPH GOLDSTEIN,

*Plaintiff,*

-against-

No. 25-CV-4118 (DEH)

LAWRENCE H. NEWMAN, KELLY
KEATING, AMANDA GOUN, RACHEL
LUTZ, and CARMEN FABIAN,

*Defendants.*

<u>**PLAINTIFF'S MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANT AMANDA GOUN'S**
**MOTION TO DISMISS THE AMENDED COMPLAINT AND**
**TO STRIKE ALLEGATIONS CONCERNING SEALED MATERIAL**
**FROM THE PARTIES' DIVORCE PROCEEDINGS**</u>

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................. 1

RELEVANT ALLEGATIONS ................................................................. 2

ARGUMENT ........................................................................................ 4

I.    The FAC Alleges that Goun Acted "Under Color of State Law" ................................ 4

    a.    The FAC Alleges That Goun Misused Power Possessed by Virtue of State Law ............................................................................................ 4

    b.    The FAC Also Alleges Goun Jointly Participated and Conspired with State Actors ........................................................................................ 7

II.    The FAC Alleges That Goun's Actions Proximately Caused Mr. Goldstein's Injuries ..................................................................................... 13

III.   The Domestic Relations Abstention Doctrine Does Not Apply to the FAC's Claims ...................................................................................... 14

IV.    The FAC Alleges That Goun Violated § 487(1) ....................................... 19

V.    The FAC's State Law Conspiracy Claim is Not Time-Barred .................................. 20

VI.    The Court Has Supplemental Jurisdiction Over the FAC's Theft Claims ................ 21

VII.   The Court Should Deny Goun's Motion to Strike ....................................... 21

CONCLUSION ..................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**

*Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328 (2d Cir. 2006)................................ 21

*Adler v. Pataki*, 185 F.3d 35 (2d Cir. 1999) ................................................................... 5

*Anilao v. Spota*, 774 F. Supp. 2d 457 (E.D.N.Y. 2011)....................................... 9, 13, 14

*Back v. Hastings on Hudson Union Free School Dist.*, 365 F.3d 107 (2d Cir. 2004) .................. 6

*Bang v. Utopia Restaurant*, 923 F. Supp. 46 (S.D.N.Y. 1996)....................................... 9

*Betts v. Shearman*, 751 F.3d 78 (2d Cir. 2014)............................................................ 10

*Bossom v. Bossom*, 551 F.2d 474 (2d Cir. 1976) .......................................................... 19

*Chase Manhattan Bank, N.A. v. T & N plc*, 905 F. Supp. 107 (S.D.N.Y. 1995) ......................... 20

*Clark v. Hanley*, 89 F.4th 78 (2d Cir. 2023) ............................................................. 3

*Curley v. AMR Corp.*, 153 F.3d 5 (2d Cir. 1998) ........................................................ 11

*Deem v. DiMella-Deem*, 941 F.3d 618 (2d Cir. 2019) ................................................... 15

*Defalco v. MTA Bus Company*, 788 Fed. Appx. 43 (2d Cir. Oct. 2, 2019) ................................ 6

*Donahue v. Pataki*, 28 F. App'x 59 (2d Cir. 2002) ...................................................... 16

*Dowlah v. Dowlah*, 2010 WL 889292 (E.D.N.Y. Mar. 10, 2010)................................. 16

*Evans v. Adams*, 714 F. Supp. 3d 119 (E.D.N.Y. 2024)................................................. 16

*Fisk v. Letterman*, 401 F. Supp. 2d 362 (S.D.N.Y. 2005) ....................................... 11, 12

*Freeman v. HSBC Holdings PLC*, 57 F.4th 66  (2d Cir. 2023) ...................................... 11

*Friedman v. New York City Admin. For Children's Services*,
    2005 WL 2436219  (E.D.N.Y. September 30, 2005)....................................... 8, 10

*G-I Holdings, Inc. v. Baron & Budd*, 238 F. Supp. 2d 521 (S.D.N.Y. 2002)............................ 25

*Harris v. Tioga County*, 663 F. Supp. 3d 212 (N.D.N.Y. 2023)........................................ 9, 10, 12

*In re Aluminum Warehousing Antitrust Litigation*, 95 F. Supp. 3d 419 (S.D.N.Y. 2015) ........... 11

*Jean-Laurent v. Hennessy*, 840 F.Supp.2d 529 (E.D.N.Y. 2011) ................................................. 21

*Keane v. Keane*, 2012 WL 6582380 (S.D.N.Y. Dec. 17, 2012) ..................................................... 15

*Kumaran v. Northland Energy Trading, LLC*, 762 F. Supp. 3d 322 (S.D.N.Y. 2025) ........... 24, 25

*Lipsky v. Commonwealth United Corp.*, 551 F.2d 887 (2d Cir. 1976) .................................... 23, 24

*Martin v. Berkshire Life Insurance Company of America*,
    2021 WL 3855442 (S.D.N.Y. Aug. 27, 2021) ....................................................... 22

*Mazza v. Hendrick Hudson Cent. School Dist.,* 942 F. Supp. 187 (S.D.N.Y. 1996).................... 21

*McSweeney v. Cohen*, 776 F. Supp. 3d 200 (S.D.N.Y. 2025) ....................................................... 24

*Merrill v. Copeland*, 2020 WL 3545556 (N.D.N.Y. June 30, 2020).............................................. 7

*Monsky v. Moraghan*, 127 F.3d 243 (2d Cir. 1997) .................................................................. 6, 7

*People v. Canale*, 658 N.Y.S.2d 715 (3d Dep't 1997) ................................................................ 20

*Ranney v. Bauza*, 2011 WL 4056896  (S.D.N.Y. Aug. 31, 2011) ................................................ 17

*Rosario v. Amalgamated Ladies' Garment Cutters' Union, Local 10, I.L.G.W.U.*,
    605 F.2d 1228 (2d Cir. 1979)..................................................................................... 21

*Selvaggio v. Hiatt*, 2019 WL 2515618 (E.D.N.Y. June 18, 2019) ............................................... 17

*Sonbuchner v. Sonbuchner*, 96 AD3d 566 (1st Dep't 2012) ....................................................... 23

*Townes v. City of New York*, 176 F.3d 138 (2d Cir. 1999) ......................................................... 13

*United States v. Awan*, 2007 WL 749739 (E.D.N.Y. Mar. 7, 2007).............................................. 12

*United States v. Tarpley*, 945 F.2d 806 (5th Cir. 1991)................................................................ 7

*Weintraub v. Board of Educ. Of City of New York*,
    423 F. Supp. 2d 38 (E.D.N.Y. 2006) ..................................................................... 9, 10, 11

*Young v. Suffolk County*, 705 F.Supp.2d 183 (E.D.N.Y. 2010)..................................................... 8

*Zappin v. Comfort*, 2024 WL 5001624 (2d Cir. Dec. 6, 2024).................................................... 16

**Statutes**

Domestic Relations Law 235(1) .................................................................................................. 22

## PRELIMINARY STATEMENT

Defendant Amanda Goun's request for an early pleadings-stage dismissal of this case suffers from myriad defects, but chief among them is her steadfast refusal to grapple with the actual allegations in Plaintiff Joseph Goldstein's First Amended Complaint ("FAC"). Most notable is her repeated characterization of herself as Goldstein's "victim." However she may see herself, the FAC alleges that Goun, a Deputy Bureau Chief at the Manhattan District Attorney's office ("DANY"), used the power of her position to falsely accuse and maliciously prosecute Goldstein for her own personal benefit. Specifically, it alleges she concocted false assault and child endangerment charges (against their children, no less) and then acted jointly with her professional friends and colleagues to have these charges prosecuted as *felonies* to the fullest extent of the law for months. The criminal case against Goldstein was ultimately dropped when independent prosecutors realized it had no merit, and numerous neutral observers came to the independent conclusion that Goun had manufactured false charges against Goldstein. By labeling herself the "victim" here, Goun tries to reframe the FAC in the light most favorable to her, which simply disregards the requirement that the Court accept those allegations as true at this stage.

When applying those actually-pled facts to the law, all of Goun's pleadings-stage arguments fall apart. By manufacturing false criminal charges and aggressively pushing prosecutors and law enforcement to prosecute them on the sole basis of her knowingly false reports, Goun plainly acted "under color of state law" and was the proximate cause of Goldstein's injuries, consistent with a long line of unbroken precedent as to each element. Goldstein's claims in this case are not "matrimonial" simply because Goun manufactured those false charges for purposes of obtaining benefits in the couple's divorce proceedings. Despite the shocking nature of the FAC's allegations, Goldstein's claims against Goun are at bottom garden-variety civil rights

1

claims involving a state actor's improper use of state authority. Indeed, contrary to Goun's suggestion, the principal damages alleged in the FAC stem directly from the effects of Goldstein's prosecution. Goun's arguments as to the timeliness of Goldstein's conspiracy claim and the actionability of his claim under Judiciary Law 487(1) misread the law; and her specious argument that Goldstein's state law claims are not sufficiently connected to his federal claims for purposes of supplemental jurisdiction misreads the complaint. Finally, Goun's effort to strike certain allegations in the FAC because they mention the matrimonial proceedings is meritless. Those allegations certainly relate to the issues to be tried here and Goun's suggestion that the FAC published those allegations in violation of any sort of restriction is unequivocally false.

## RELEVANT ALLEGATIONS

On October 5, 2022, Goun was caught burglarizing an apartment belonging to Goldstein's family in an attempt to convince the matrimonial court overseeing their divorce proceedings to give her exclusive use of the couple's home. FAC ¶¶ 48-69. After Goldstein and his attorneys laid out the potential criminal exposure from her burglary, ¶¶ 64, 70-71, 76-77, Goun decided that the best way to avoid responsibility for her criminal conduct and achieve her goals in the divorce proceedings was for her office (DANY) to criminally charge Goldstein.

Three days later, on October 8, 2022, Goun called the police to report that Goldstein had hurt her (by closing his own bedroom door to prevent her from berating and filming him), setting off the series of actions that would result in Goldstein's false arrest, criminal prosecution, and ensuing damages. ¶¶ 77-91. Although Goun told the responding officers right away that she worked as an ADA, they determined that Goldstein had not committed a crime and so informed Goun repeatedly. ¶¶ 93-107. This assessment prompted Goun to immediately involve her colleague (and personal friend) Defendant Larry Newman—Bureau Chief of DANY's Domestic

Violence Unit—and to change her story repeatedly over the next three days, adding allegations she realized necessary for sustaining more serious felony charges. ¶¶ 109-112. She subsequently tacked on a claim that Goldstein had actually hit her with the door so forcefully that she fell to the ground, ¶¶ 110-112, speculated her arm was broken, included in the Domestic Incident Report ("DIR") additional historical allegations of Goldstein opening doors onto her, and added that their children were home for the whole thing—a particularly insidious effort to lay the groundwork for charges involving the children. *See* Exhibit 1 (DIR); *see Clark v. Hanley*, 89 F.4th 78, 93 (2d Cir. 2023) (courts may, on a motion to dismiss pursuant to Rule 12(b)(6), review documents "incorporated in the complaint by reference"). Ultimately, Defendant Rachel Lutz, the NYPD investigating officer, after being pressured by Goun and instead of conducting an independent investigation, accepted Goun's assertions that elements of each charge had been met.

Throughout, Goun used her connections within DANY and status as an ADA to manipulate the investigation. On October 8, while police officers were in earshot, Newman advised her on what to write in her initial statement. With Newman on the phone, Goun conveyed to the police officers that it was her and Newman's conclusion that Goldstein would be charged with a felony. *See* ¶¶ 138-147 (detailing Goun's statement, for the police to hear, "Of course it's Attempted Assault 2;" Goun's completion of the DIR in coordination with Defendant Newman, and explanation that "*Larry told me to put all of it down, for what he's gonna charge later*"). Defendant Keating of DANY inserted herself into charging decisions, even after DANY was disqualified and the case was reassigned to a special prosecutor from the Bronx District Attorney's office.

Though the Bronx DA eventually dropped the charges against Goldstein because they were not able to meet their burden of proof, ¶¶ 377, the damage was done. Further, Goun has continued her efforts to manipulate the criminal justice and child protective systems by falsely accusing

3

Goldstein of harming the children. ¶¶ 340-350. Goldstein filed this lawsuit to seek recompense for Defendants' violations of his constitutional rights.

## ARGUMENT

### I.    The FAC Alleges that Goun Acted "Under Color of State Law"

Goun seeks to dismiss each of Goldstein's claims under Section 1983 on the ground that Goldstein failed to allege that she was acting "under color of state law." Her arguments fail. As relevant here, there are two manners in which an individual acts "under color of state law" for purposes of Section 1983: (i) she misused "power possessed by virtue of state law;" or (ii) she engaged in "joint activity" or conspired with someone so possessed. Contrary to Goun's contentions, Goldstein has pled both.

#### a.   The FAC Alleges That Goun Misused Power Possessed by Virtue of State Law

Goun only half-heartedly addresses the theory that she was alleged to have used power possessed by virtue of state law. Rather, she argues that she was supposedly acting in her "capacity as a victim," not as an ADA, and therefore can only be said to have acted under color of law under a "joint activity" theory of state action. *See* MTD at 4-5. Goun is simply wrong.

To start, Goun's repeated statement that she acted as a "victim" is *ipse dixit*, false, and contrary to the FAC's allegations. The FAC alleges *Goun* victimized Goldstein by falsely concocting allegations—in their entirety[1]—that he had harmed her and their children. By repeatedly arguing that she was simply a "victim" reporting a crime, she fails to accept the FAC's allegations as true and tries to get the FAC dismissed on her own (false) version of the facts.

---

[1] Goun appears to make much of the supposed conclusion of the responding officers that although they determined Goldstein did not commit a crime, they would take a report for the non-arrestable offense of harassment. But the officers were acting solely on the basis of Goun's account which Goldstein plainly alleges was false. To be clear, the FAC can in no way be construed to characterize Goun a "victim" of anything.

4

Next, Goun argues that Goldstein "makes no allegation that Goun exercised any power afforded by her position as an ADA," and instead only pleads that she acted in a "private capacity." The argument fails. Notwithstanding the singular sentence on which Goun (misleadingly) relies,[2] the FAC includes myriad allegations that Goun was acting with the power she possessed by virtue of her position as an ADA. The FAC alleges that Goun was only able to accomplish her nefarious goals by invoking the authority and power of her state position. Specifically, the FAC alleges that Goun *immediately* (and gratuitously) told the responding officers that she was an ADA. FAC ¶ 94. She then proceeded to engage in an audible conversation with Newman, the Bureau Chief of the Domestic Violence Unit—within the earshot of law enforcement—where she used her status as an ADA to disparage the responding officers' determinations that no crime was committed and conveyed that she and Newman would charge this as a felony. FAC ¶¶ 94, 119-130 (Goun stating "Of course it's an attempted assault 2" immediately after the officers had come to a contrary conclusion that no crime was committed). The FAC even alleges the responding officers' demeanors noticeably changed on hearing that conversation, FAC ¶ 127, and that they "were influenced by the involvement in this investigation of Defendant Newman, a supervisory ADA, and Goun, an ADA invoking her authority." FAC ¶ 130. As alleged, this was Goun's precise goal: "Rather than accept the determinations of the responding NYPD officers who had thoroughly

---

[2] Specifically, Goun's argument that the FAC alleges she acted in a "private capacity" relies almost entirely on a misleadingly selective quotation from the FAC's Causes of Action section. What the FAC *actually* alleges is that Goun acted "in a private capacity, an investigative capacity, ***and/or*** in the clear absence of all jurisdiction." Goun cites only to "private capacity" (and inaccurately replaces the comma that follows with a period) to falsely suggest that's all that Goldstein alleged. But Goun omits the latter two items of that disjunctive list—"investigative capacity" and "absence of all jurisdiction"—which are plainly allegations that Goun acted as a state actor and *not* a private actor. And to be clear, pleading in the disjunctive (or alternative) is neither inappropriate nor unusual, especially at the pre-discovery stage. *See Adler v. Pataki*, 185 F.3d 35, 41 (2d Cir. 1999) (Fed. R. Civ. P. 8(d) "offers sufficient latitude to construe separate allegations in a complaint as alternative theories").

investigated the matter, Goun chose to leverage her position of influence and authority as a DANY prosecutor to pursue false criminal felony charges against Mr. Goldstein." FAC ¶ 118.

The FAC then alleges that Goun remained on the phone with Newman as she wrote out her incident report in the presence of multiple law enforcement officers, taking his direction, and then telling the officers: "I'm just doing what [Newman] told me to do. From DV;" that "I called [Newman] because I used to work for him and now with him;" and Newman "told me to put all of it down, for what he's going to charge later." ¶ 125. Goun thus made clear that she was no ordinary witness reporting a crime—she was an ADA who had contacts at the supervisory levels of the DA's office, and she was using them. Further, the FAC alleges that Goun and Newman continued to leverage their respective positions to pressure Lutz to pursue assault and child endangerment charges, FAC ¶¶ 155-243, and that Goldstein remains in fear that "Goun will continue to use her position of authority to pursue false criminal charges against him," FAC ¶ 462.

These facts clearly constitute a misuse of authority that Goun possessed by virtue of her position as an ADA. State employees act under color of state law "when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Back v. Hastings on Hudson Union Free School Dist.*, 365 F.3d 107, 122 (2d Cir. 2004). "[I]f an individual is possessed of state authority and purports to act under that authority, his action is state action. It is irrelevant that he might have taken the same action had he acted in a purely private capacity." *Defalco v. MTA Bus Company*, 788 Fed. Appx. 43, 45 (2d Cir. Oct. 2, 2019). The "'purpose of § 1983 is to deter state actors from using the *badge of their authority* to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails.'" *Monsky v. Moraghan*, 127 F.3d 243, 245 (2d Cir. 1997).

6

Under that clear case law, the FAC sufficiently alleges that Goun misused power that she possessed by virtue of state law. The Second Circuit's decision in *Monsky* is instructive. There, the plaintiff alleged that a state court judge violated her constitutional rights by permitting his dog to harass her and other women in the clerk's office of the courthouse while the plaintiff was trying to look at court files. *Id.* at 244. The Second Circuit held that the plaintiff had alleged the judge acted under color of state law because he "was enabled to take the alleged actions only because of his judicial status." *Id.* at 246. The plaintiff had alleged "that ordinary citizens were not permitted to bring their dogs into the Clerk's office," and "that Judge Moraghan was known to, and deferred to by, personnel of the office, and that he was allowed to enter the office with his dog and remain there during the alleged episodes because he was a judge." *Id.* at 246; *see also United States v. Tarpley*, 945 F.2d 806, 809 (5th Cir. 1991) (finding state action where "the air of official authority pervaded the entire incident"); *Merrill v. Copeland*, 2020 WL 3545556, at *4 (N.D.N.Y. June 30, 2020) (finding state action where state employee falsely reported plaintiff as perpetrator of assault, because "'air of official authority pervaded' Defendant's reports to law enforcement"). Here too officers "deferred" to Goun because of her official position, and her willingness to use it. *Monsky*, 127 F.3d at 246. And, for all the reasons noted above, an "air of official authority pervaded the entire incident," *Tarpley*, 945 F.2d at 809, as the officers waited on Goun as she took control.

### b.  The FAC Also Alleges Goun Jointly Participated and Conspired with State Actors

Goun's principal argument regarding "color of state law" is that the FAC supposedly failed to allege "joint activity" or a conspiracy between Goun and state actors for purposes of Section 1983. No faithful reading of the FAC can come to that conclusion.

The MTD appears to argue that Goldstein fails to plausibly allege "joint activity" or conspiracy for four reasons: (i) the "joint activity" theory only applies in cases involving false

7

reports to law enforcement in "very limited circumstances" that are not present here; (ii) the FAC's conspiracy allegations fail because they do not allege that Goun reached agreements with each-and-every state actor involved in Goldstein's criminal prosecution; (iii) without allegations of "motive," it is simply "implausible" that the defendants engaged in joint activity under color of state law; and (iv) the FAC does not allege that Goun "affirmatively induced" law enforcement officers to arrest or prosecute Goldstein. *See* MTD at 6-12. None of these arguments has merit.

### i. Courts Routinely Find "Joint Action" in Cases Like This, i.e., Where a Defendant Aggressively Pushed a Criminal Prosecution

Goun begins by arguing that individuals "who report crimes to authorities cannot be held liable for their actions under 42 U.S.C. § 1983" except under "very limited circumstances." MTD at 1, 5. But whether or not such circumstances are "very limited," those precise circumstances are present here. Indeed, there is an entire body of caselaw holding private citizens accountable as state actors when they falsely and maliciously accuse people of crimes—and this case falls squarely within it. Specifically, courts have uniformly held that plaintiffs state a "plausible claim that there was an agreement or joint action to inflict an unconstitutional injury and an overt act in furtherance of the goal by the defendants" where they allege that the private defendant fabricated evidence and furnished that evidence to the authorities, then worked with those authorities to violate a plaintiff's constitutional rights. *Young v. Suffolk County*, 705 F.Supp.2d 183, 199 (E.D.N.Y. 2010) (finding "joint action" where plaintiff alleged that her estranged husband fabricated evidence of an unsanitary condition in the plaintiff's home while she and the children were away, then summoned the police to the home, resulting in an ACS investigation and removal of her children); *see also Friedman v. New York City Admin. For Children's Services*, 2005 WL 2436219 at *8 (E.D.N.Y. September 30, 2005) (joint action between psychiatrist and ACS alleged

where psychiatrist provided ACS with false and malicious information and was a willing participant in scheme "set in motion by his false oral and written reports to ACS" and which "caused the initiation of the Neglect Proceeding that resulted in the suspension of plaintiff's parental rights over the course of more than half a year"). Courts have likewise found the "joint action" test satisfied where a private party's statements to law enforcement shift in material ways over time, as the FAC in this case clearly alleges. *See Harris v. Tioga County*, 663 F. Supp. 3d 212, 244 (N.D.N.Y. 2023). Indeed, courts routinely find that private parties who elicit the assistance of the authorities act under color of state law where they take an "active role" in investigations and prosecutions. *Anilao v. Spota*, 774 F. Supp. 2d 457, 499 (E.D.N.Y. 2011). To be sure, Goun is correct that "[c]alling the police, *alone*, does not establish joint action between the police and the private caller." *Bang v. Utopia Restaurant*, 923 F. Supp. 46, 49 (S.D.N.Y. 1996) (emphasis added). But where a plaintiff's allegations "go beyond mere assertions of 'communications' or 'cooperation' and instead involve claims that [a private party was] actively involved in the investigation and prosecution," joint action is established. *Anilao*, 774 F. Supp. 2d at 502.

The FAC clearly alleges joint action under the foregoing authority. That is to say, contrary to Goun's suggestion that she simply reported a crime and placed the issue in the hands of the police, the FAC alleges that Goun reported a (knowingly false) crime to the police and then took *numerous affirmative, aggressive, and escalating* steps over weeks and with multiple government actors to ensure that those actors prosecuted Goldstein and did so aggressively. Goun and Newman agreed Goldstein should be charged with a serious, "arrestable" crime despite the lack of probable cause for any such charge—a clear violation of Goldstein's constitutional rights, ¶¶ 121-125 (*see Weintraub v. Board of Educ. Of City of New York*, 423 F. Supp. 2d 38, 58 (E.D.N.Y. 2006);

9

Newman and Goun each took overt acts in furtherance of that agreement, ¶¶ 138-147; 300-304; Goun provided Lutz false and malicious information, FAC ¶¶ 141-144, 190-192, 205-233, and was a willing participant in a scheme "set in motion by h[er]" fabricated evidence, which "resulted in the suspension of plaintiff's parental rights over the course of more than half a year," *Friedman*, 2005 WL 2436219, at *8; Goun's story evolved in material ways as she, Newman, and Lutz were in communication, FAC ¶¶ 125, 163-177 (*see Harris*, 663 F. Supp. 3d at 244); and Goun, Newman, and Keating leveraged their positions to pressure Lutz and special prosecutor Bronx ADA Jennifer Esposito to bring increasingly serious charges. FAC ¶¶ 155-243; 300-317.

Goun's reliance on *Betts v. Shearman* to counter the vast body of "joint action" law is misplaced. *See* MTD at 5-6. In *Betts*, the court *distinguished* between cases where police officers immediately arrest a plaintiff based on information provided by a private actor and cases like this one. *See Betts v. Shearman*, 751 F.3d 78, 85 (2d Cir. 2014). The *Betts* court found *Bang v. Utopia Restaurant* illustrative, as it is here. In *Bang*, "state action by a restaurant owner was adequately pleaded when, absent probable cause, the police arrested the plaintiffs after speaking to the restaurant owner for twenty minutes." *Id.* at 85, (citing *Bang*, 923 F. Supp. at 49). "The *Bang* court stated that 'it would be reasonable to infer that during the conversation, [the restaurant owner] urged the officers to arrest both plaintiffs, without probable cause, in furtherance of what became the shared goal of depriving plaintiffs of federally guaranteed rights." *Id.* (citing *Bang*, 923 F. Supp. at 49). If the twenty minute conversation with police was sufficient to constitute state action in *Bang*, Goun's actions here are obviously sufficient to do the same here. In sum, the FAC's allegations fall neatly within the well-trodden ground of "joint action" liability under § 1983.[3]

---

[3] For related reasons, Goun's argument that the FAC does not allege "affirmative inducement" falls flat. But to start, "affirmative inducement" is an element of the tort of false imprisonment, not a prerequisite to finding "joint action" for purposes of § 1983. *See Weintraub*, 423 F. Supp. 2d at 56-57 (analyzing "affirmative inducement" issue separately

### ii. The FAC Need Not Have Alleged Goun Agreed with Each Defendant Individually as Part of One "Grand Conspiracy"

Much of Goun's argument against the applicability of the joint action or conspiracy doctrines of Section 1983 is the apparent suggestion—repeated multiple times—that Goldstein was required to allege that Goun individually came to an agreement with each-and-every defendant. *See* Goun MTD at 6-10. Or, as Goun frames it, that Goldstein must have alleged a "grand conspiracy." MTD at 9. But that is not the law. It is unclear why Goun believes Goldstein needs to establish that Goun conspired with each of the defendants for her to have acted "under color of state law." If Goun conspired just with Newman—as she plainly did—that is sufficient for her to be acting "under color of state law" for purposes of Section 1983. *See, e.g.*, *Fisk v. Letterman*, 401 F. Supp. 2d 362, 376 (S.D.N.Y. 2005) (§ 1983 conspiracy plaintiff must allege "an agreement between *a* state actor and *a* private party") (emphasis added). Even if Goldstein were required to allege a "grand conspiracy" involving all defendants in order to allege Goun acted "under color of state law" (he is not), there is "'no requirement that each member of a conspiracy conspire directly with every other member of it, or be aware of all acts committed in furtherance of the conspiracy, or even know every other member.'" *Freeman v. HSBC Holdings PLC*, 57 F.4th 66, 78 (2d Cir. 2023). Nor does the law require that "all conspirators have the same level of involvement in a conspiracy, nor that they be involved at precisely the same time or for the same duration." *In re Aluminum Warehousing Antitrust Litigation*, 95 F. Supp. 3d 419, 452 (S.D.N.Y. 2015). A § 1983 "plaintiff 'is not required to list the place and date of defendants['] meetings and

---

from color of state law issue). In any event, affirmative inducement is satisfied by *either* "'taking an active part in the arrest and procuring it to be made *or* showing active, officious and undue zeal to the point where the officer is not acting of his own volition.'" *Curley v. AMR Corp.*, 153 F.3d 5, 13-14 (2d Cir. 1998) (emphasis added); *Weintraub*, 423 F. Supp. 2d at 55-56. In any case, Goldstein *has* alleged that Goun affirmatively induced Lutz to manufacture the charges against Goldstein under either theory.

the summary of their conversations when he pleads conspiracy'"; instead, the pleadings must simply "'present facts tending to show agreement and concerted action.'" *Fisk*, 401 F. Supp. 2d at 376. As discussed in detail *supra*, the FAC amply alleges Goun's joint participation in the false arrest and prosecution of Goldstein, including "facts tending to show agreement and concerted action." *Id.* That is all that the law requires.

### iii.   The FAC Need Not Speculate as to Defendants' Motives

After building the straw man that Goldstein must allege a "grand conspiracy" amongst all Defendants to show she was acting "under color of state law," Goun doubles down and argues that the conspiracy allegations fail because Goldstein did not allege a *motive* for each party to engage in such a grand conspiracy. *See* MTD at 8-10. This argument is misplaced on multiple levels.

*First*, "motive is not an element of" conspiracy. *United States v. Awan*, 2007 WL 749739, at *6 n.7 (E.D.N.Y. Mar. 7, 2007); *see also id.* ("the lack of a demonstrated motive is of no relevance"). *Second*, even if motive *were* an element of conspiracy, motive in malicious prosecution and false arrest cases is *presumed* where, as here, law enforcement arrests or prosecutes an individual without probable cause. *See, e.g.*, *Harris*, 663 F. Supp. 3d at 239. Thus, each of the defendants are alleged to have had the relevant motive. And *third*, even if motive bore any relevance to conspiracy, the relevant motive here would be to arrest and prosecute Goldstein without probable cause—notwithstanding Goun's suggestion that each conspirator would need to share Goun's personal motive in obtaining benefits in her divorce proceeding.[4]

---

[4] In any case, *see* FAC ¶¶ 153, 257, 351.

**II.    The FAC Alleges That Goun's Actions Proximately Caused Mr. Goldstein's Injuries**

Goun argues that the judgments of the other defendants sever any causal connection between her actions and Goldstein's injuries. The argument fails under clear case law, for similar reasons that her "joint action" arguments fail—Goun again ignores entirely the fact that she is alleged not just to have simply reported a false crime to the police, but that she *aggressively and consistently* pushed other government actors to prosecute Goldstein.

To be sure, the "chain of causation" between an unlawful arrest and a subsequent prosecution may be broken "by the intervening exercise of independent judgment" by prosecutors, grand jury, judge, or jury. *Townes v. City of New York*, 176 F.3d 138, 147 (2d Cir. 1999). But that causal break only exists "in the *absence* of evidence that the [individual initially responsible for the arrest] misled or pressured the official who could be expected to exercise independent judgment." *Id.* (emphasis added). Here, Goun *did* mislead and pressure those officials, and her acts are thus a proximate cause of the decisions that came out of that non-independent judgment. On this the law is clear. Where a private actor does more than "merely elicit" an exercise of state authority, but instead "incite[s] the exercise of state authority by pressuring the [government] defendants to take action to satisfy the [private defendant's] goals and for the [private defendant's] sole benefit," a § 1983 plaintiff sufficiently states a claim. *Anilao*, 774 F. Supp. 2d at 501; *see id.* at 502 ("[G]iven that plaintiffs could not constitutionally have been prosecuted for their conduct, the County defendants would not have pursued the prosecution of plaintiffs at all but for the pressure and influence of the [private] defendants.").

As laid out in detail above, the FAC is full of allegations that Goun, in collaboration with Newman, misled and/or pressured law enforcement to aid their goal of bringing increasingly serious charges against Goldstein, despite law enforcement's awareness that there was no probable

case for the crimes with which Goldstein was charged. FAC ¶¶ 159, 171-172, 201, 227-236, 241-243; *see Anilao*, 774 F. Supp. at 502 ("In support of their assertion that the County defendants would not have acted but for the direction of the [private] defendants, plaintiffs point to significant exculpatory evidence that the County defendants allegedly were aware of prior [to] initiating the prosecution[.]").    The FAC also alleges that the primary law enforcement officer that Goun pressured, Lutz, improperly delegated much of her investigatory role to Goun and Newman. FAC ¶ 184, 206, 210-216; *see Anilao*, 774 F. Supp. at 502 ("plaintiffs allege that the county defendants did not exercise independent judgment here, but instead acted at the direction of the [private] defendants and substituted the judgment of the [private] defendants for their own"). Indeed, the NYPD Internal Affairs Bureau later concluded that Lutz had engaged in an incomplete and improper investigation. FAC ¶ 260-261. The FAC also alleges that Goun and Newman improperly interfered with Goldstein's case after DANY was disqualified. FAC ¶¶ 300-317. Given these allegations, "'[i]t is not readily apparent why the chain of causation should be considered broken where the initial wrongdoer can reasonably foresee that his misconduct will contribute to an 'independent' decision that results in a deprivation of liberty.'" *Anilao*, 774 F. Supp. 2d at 506. Goun "cannot hide behind the decision[s]" of law enforcement "when it was [she] who allegedly spurred [law enforcement] to act and fed them with false testimony in pursuit of that endeavour." *Id.* at 506.

## III.    The Domestic Relations Abstention Doctrine Does Not Apply to the FAC's Claims

Goun's next effort to defeat Goldstein's federal claims is to argue that the Court should apply the "domestic relations abstention doctrine."[5] As laid out below, this civil rights case

---

[5] At times, Goun suggests she may be trying to invoke the separate domestic relations *exception* to subject matter jurisdiction. *See* MTD at 14. But that plainly does not apply here. *See Deem v. DiMella-Deem*, 941 F.3d 618, 623 (2d

concerning the corrupt and unconstitutional use of the criminal justice system to orchestrate felony criminal proceedings against an innocent man does not come close to justifying domestic relations abstention. Goun's decision to direct her unlawful and reprehensible conduct towards her husband does not turn this into a "matrimonial" dispute.

The domestic relations abstention doctrine derives from the "longstanding recognition . . . that '[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United States.'" *Deem*, 941 F.3d at 624. But the doctrine is applied by federal courts only "for *certain* domestic relations disputes" where claims are "on the verge of being matrimonial in nature" and "there is no obstacle to their full and fair determination in state courts." *Id.* at 622, 624 (emphasis added). This is certainly not one of those cases.

Any review of case law demonstrates that the doctrine has nothing to do with this case. Indeed, the Court need look no further than each of the six cases on which Goun relies in her motion papers. *See* MTD at 14-17. In each of those cases, the plaintiffs sued multiple individuals directly involved in their state court divorce proceedings—in three of them, they sued the *presiding judge*—and they did so based on the defendants' conduct *within the divorce proceeding* that they claimed was actionable. Specifically:

- In *Deem*, 941 F.3d 618, the plaintiff sued, *inter alia*, his wife and the judge presiding over their family court action, alleging that the defendants maliciously prosecuted him by way of claims that were brought *in the divorce case*.

- In *Keane v. Keane*, 2012 WL 6582380 (S.D.N.Y. Dec. 17, 2012), the plaintiff brought a fraud claim in which he alleged the defendant committed "'fraud

---

Cir. 2019) ("the domestic relations exception clearly does not apply to this case because it is 'before this Court on federal question jurisdiction, not diversity'").

upon the [divorce] court'" and that his "claim occurred during litigation of the divorce proceedings."

- In *Dowlah v. Dowlah*, 2010 WL 889292 (E.D.N.Y. Mar. 10, 2010), the plaintiff sued his wife, the judge presiding over their family court action, and the law guardian and forensic evaluator appointed by that judge, all on claims concerning conduct that occurred in the family court proceeding.

- In *Donahue v. Pataki*, 28 F. App'x 59 (2d Cir. 2002), the plaintiff sued "his former wife and several state officials, assert[ing] various claims relating to a New York State Family Court's decision affirming an increase in his weekly child support payments." Notably, although the Court dismissed plaintiff's request for an order overturning the child support ruling under the domestic relations exception, it did *not* invoke that exception (or the domestic relations abstention doctrine) as to plaintiff's Section 1983 claims and instead addressed those claims on the merits.

- In *Zappin v. Comfort*, 2024 WL 5001624 (2d Cir. Dec. 6, 2024), the plaintiff sued his ex-wife, the lawyer that represented his ex-wife in family court proceedings, and the lawyer appointed to represent his children in those proceedings, primarily alleging that they conspired against him in a custody proceeding. Notably, the plaintiff there acknowledged that the family court custody proceeding was "the matter from which the instant case stems" and this complaint "'largely has its origins in [his] personal divorce and child custody matter filed against his ex-wife,'" and "[h]e expressly assert[ed] that— through their alleged fraud, abuse of process, and misconduct *in the custody action*—the defendants violated his rights to parental relations and the custody of his son."

- In *Evans v. Adams*, 714 F. Supp. 3d 119 (E.D.N.Y. 2024), the plaintiff sued "Justice Rachel Adams of the Kings County Supreme Court, alleging various federal constitutional and statutory violations and seeking various forms of declaratory relief regarding her adjudication of domestic relations proceedings involving him."

This case is nothing like those cases. Goldstein did not sue any of the other participants in his divorce proceedings other than his wife (a prosecutor in the very office that prosecuted him) and none of Goldstein's claims depend on a showing of *any* conduct that anyone engaged in within the divorce proceedings. Indeed, with those cases in mind, it is clear that this case does not remotely fit into the domestic relations abstention doctrine. This is so for several reasons.

16

*First*, as Goun acknowledges, Goldstein "does not seek to overturn any state-court order," which is typically what courts applying the domestic relations abstention doctrine rely on to find a case "verges" on being matrimonial. *See, e.g.*, *Ranney v. Bauza*, 2011 WL 4056896, at *3 (S.D.N.Y. Aug. 31, 2011) (finding that claims related to a "marital settlement agreement" and "the distribution of marital property" "verged on being matrimonial in nature"); *Selvaggio v. Hiatt*, 2019 WL 2515618, at *2 (E.D.N.Y. June 18, 2019) (finding abstention proper where plaintiff "challenges a temporary spousal support award issued in the State Court Action"). Indeed, Goldstein's claims are only for money damages, and as laid out further below, those damages overwhelmingly relate to the direct harms Goldstein faced for being criminally prosecuted.

*Second*, there is not a single component of the merits of any of Goldstein's claims that depend on anything that occurred in the parties' divorce proceeding. In particular, to prove the merits of his tort and statutory claims, Goldstein will be focused almost entirely on the events of October 8, 2022 in Goldstein and Goun's shared apartment, the resulting NYPD investigation, the prosecution that followed, and the subsequently dismissed criminal court case against him. Unlike *each* of the cases on which Goun relies, Goldstein is not claiming that *any* conduct by *anyone* in the divorce proceeding is actionable. To be sure, the FAC cites to certain of Goun's misconduct during the parties' custody and matrimonial litigation, but it does so only to illustrate that several neutral observers have found her culpable of making false statements about some of the same facts that are at issue here.

Finally, it is significant to note that it was *Goun's* decision to bypass the pending matrimonial case and seek a quick outcome in Criminal Court (where she wielded state power that led to this case). As laid out in the FAC, the officers who arrived at the scene on October 8th specifically advised her "that, if she wished, she could secure a temporary order of protection in

17

Family Court (rather than Criminal Court, given that this was not a criminal issue in their informed assessment)." ¶ 114-15. "Goun repeatedly indicated to the officers, however, that she did not want to seek an order of protection in Family Court. . . . Rather, [she] made clear that she instead wanted Goldstein to be criminally charged so that she could get an automatic order of protection through the criminal process." ¶¶ 116-17. In other words, Goun purposefully and strategically orchestrated false criminal charges outside of the parties' matrimonial proceedings—further reason to reject her argument Goldstein should now be forced to bring his constitutional claims seeking redress for those unlawful actions in the same proceeding she circumvented.

*Third*, contrary to Goun's argument, the substantial majority of Goldstein's alleged damages have nothing to do with the divorce case. Of the eleven paragraphs in the complaint generally describing Goldstein's damages, Goun focuses on the subparts of *one*, and within that paragraph, she ignores the primary economic damage Goldstein asserts: the legal expenses Goldstein was forced to incur to defend himself in the criminal case Goun unlawfully sprung. Those significant costs have nothing to do with the parties' matrimonial case. Stated differently, the claims at issue here involve Goun's misconduct outside of divorce court and are not "matrimonial" or "verging on matrimonial" just because their fallout—Goldstein's extensive injuries and damages—had separate bearing on the parties' matrimonial disputes.

*Fourth*, the fact that Supreme Court is a court of general jurisdiction is of no moment, as Goun has cited no authority showing that a litigant in a *matrimonial* proceeding in Supreme Court can also bring Section 1983 claims. Regardless, Goun makes no factual submission (as the movant here) demonstrating that Goldstein is in a position now to interpose those claims in the parties' pending matrimonial case. In any event, courts applying the domestic relations abstention doctrine that look to whether the claims at issue can be litigated in state court do so principally where the

18

state court has particular expertise, experience, or insight into the matrimonial issues that were improperly brought elsewhere. *See, e.g.*, *Bossom v. Bossom*, 551 F.2d 474, 475 (2d Cir. 1976) (the purpose of the "'on the verge'" principal of abstention is to support "the interests of justice" when they "would be served by allowing the determination to be made by [state courts] in view of their great familiarity with matrimonial disputes and the absence of any such expertise by the federal courts"). There is no basis to conclude that the Court presiding over the parties' now-lengthy matrimonial proceeding has any special expertise in the issues in this case, *e.g.*, whether state actors collaborated to deprive Goldstein of his federal constitutional rights.

*Finally*, Goun ignores the significant impracticalities and inefficiencies that would be created by forcing Goldstein to litigate his civil rights claims against Goun in the parties' matrimonial case. Goun suggests that Goldstein has alleged "no reason why [he] cannot raise all his claims in these proceedings," but she ignores that Goldstein has also sued four other government officials in this case for violating his constitutional rights, none of whom can invoke (or have invoked) the domestic relations abstention doctrine. As such, all of these issues will be litigated in this Court no matter the outcome of this abstention request. Indeed, for Goun to have it her way, these issues would have to be litigated piecemeal, with the inefficiencies, overlapping discovery, and risk for inconsistent rulings that it would entail.

## IV.    The FAC Alleges That Goun Violated § 487(1)

Goun argues that Judiciary Law § 487 cannot apply to her conduct in this case because (i) she was acting as a "private litigant" at all relevant times and the statute does not apply to that conduct; and (ii) none of her supposedly violative conduct occurred in the actual "litigation of charges by the Bronx DA's office" but rather came before that. These arguments fail.

*First*, Goun errs in relying on the supposed "private litigant" exception to Section 487. Even if there were an ironclad "private litigant" exception,[6] Goun would not qualify for it because, for all the reasons discussed above, Goun repeatedly invoked the authority of her position as an ADA at DANY and consistently colluded with other attorneys in that office (*e.g.*, Newman). In other words, Goun was "an attorney acting in his or her capacity as an attorney." *People v. Canale*, 658 N.Y.S.2d 715, 717 (3d Dep't 1997). *Second*, Goun's contention that "all" of her alleged wrongdoing "stems from the decision to prosecute Plaintiff in the first place, or false statements made in criminal complaints," is false. As alleged above, the FAC makes clear that Goun took myriad steps to push Goldstein's prosecution forward well after October 8th, and each of those steps involved her providing (false) evidence that she knew would have been used in criminal court (*e.g.*, videos, photos, and statements). *See also* FAC ¶ 310 (the superseding information was filed "in coordination and agreement with Defendants Newman and Goun").

## V.    The FAC's State Law Conspiracy Claim is Not Time-Barred

Goun argues Goldstein's state law conspiracy claim is time-barred because, under the New York law of conspiracy, the court looks to the statute of limitations for the conspiracy's underlying torts, and the torts supposedly underlying Goldstein's conspiracy claim—state law malicious prosecution and false arrest—have a one-year limitations period. Goun is simply mistaken. The torts underlying Goldstein's state law conspiracy claim are false arrest, malicious prosecution, and

---

[6] In arguing that this statute can *never* apply to attorneys when acting in a private capacity, Goun cites no binding authority. Neither the New York Court of Appeals nor the Second Circuit have decided that an attorney who litigates or serves as a witness is immune from liability under § 487(1) even where they intentionally deceive a court (and collude with other attorneys to do so) for their own personal gain. *See Chase Manhattan Bank, N.A. v. T & N plc*, 905 F. Supp. 107, 113-14 (S.D.N.Y. 1995) ("Where the substantive law of the forum is ambiguous or uncertain, the federal court must strive to predict how the highest court of the forum state would resolve the issue."). And the authority finding a "private litigant" exception is not persuasive. Nothing in the statute suggests a private litigant exception and such judge-created immunity for members of the bar would be problematic, especially where, as here, the attorney is specifically alleged to have colluded with attorneys undoubtedly acting in their capacity as attorneys.

evidence fabrication, *all under 42 U.S.C. § 1983*, *not* state law (indeed, Goldstein did not bring

state law equivalents to those claims). And courts regularly conclude that a conspiracy claim under

New York law is subject to a three-year statute of limitations where, as here, the underlying torts

are § 1983 claims. *See, e.g.*, *Jean-Laurent v. Hennessy*, 840 F.Supp.2d 529, 560 (E.D.N.Y. 2011).

## VI.    The Court Has Supplemental Jurisdiction Over the FAC's Theft Claims

Goun argues that the Court should not exercise supplemental jurisdiction over Goldstein's

state law theft claims "because they bear no relation to Plaintiff's federal claims." MTD at 19. The

argument once again ignores Goldstein's well-pled allegations. The FAC alleges in no uncertain

terms that Goun's theft of Goldstein's property—which occurred just *three days* before Goun

falsely reported Goldstein for crimes—was one of the principal motives for Goun to commit the

federal torts alleged. Indeed, the FAC alleges that Goun and Goldstein argued over her theft less

than 30 minutes before Goun called the police on Goldstein and that "avoiding responsibility for

her own criminal conduct" (*i.e.*, her theft) was one of "two goals [Goun had] in mind . . . [when

she] devised her plan to have her office—DANY—criminally charge Mr. Goldstein with felonies."

¶ 73-77. Courts routinely exercise supplemental jurisdiction over claims that supply necessary

motive evidence for federal claims, and as such "'necessarily br[ing] the facts underlying the state

claim[s] before the court.'" *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d

Cir. 2006); *see also Rosario v. Amalgamated Ladies' Garment Cutters' Union, Local 10,*

*I.L.G.W.U.*, 605 F.2d 1228, 1247 (2d Cir. 1979); *Mazza v. Hendrick Hudson Cent. School Dist.,*

942 F. Supp. 187, 196 n.6 (S.D.N.Y. 1996).

## VII.   The Court Should Deny Goun's Motion to Strike

At the end of her brief, Goun appends a motion to "strike all allegations that reference the

ongoing matrimonial proceeding." MTD at 21. Goun's motion to strike seems to be based on three

arguments: (i) the contested allegations reveal confidential information that will not be admissible at trial; (ii) the contested allegations are not relevant to Goldstein's claims; and (iii) Goun and the couple's children will be prejudiced. These arguments fail on both the law and the facts.

*First*, the FAC reveals no confidential information, and especially none Goun has shown would be inadmissible at trial. Goun cites two authorities supposedly imposing a confidentiality obligation on these allegations, but neither applies to Goldstein or the materials in the FAC. She first quotes Domestic Relations Law 235(1). But as that statute make clear, it applies only to officers of the court and expressly *exempts* "a party" from its prohibitions. Indeed, courts have been clear that the "statute's prohibitions apply only to 'officer[s] of the court' and their 'clerk[s],'" and that it "does not place any such prohibitions on litigants." *Martin v. Berkshire Life Insurance Company of America*, 2021 WL 3855442, at *1 (S.D.N.Y. Aug. 27, 2021); *see also id.* ("'Neither the Domestic Relations Law nor the CPLR provide any statutory mandate compelling matrimonial litigants to seek leave of court before disseminating their own or their spouse's papers in a matrimonial action.'") There is also thus no basis at this point to suggest any of those materials will be inadmissible.

Goun's argument as to the handful of allegations in the FAC characterizing a forensic report compiled in the parties' matrimonial case fails for a similar reason. There is no basis to suggest that inclusion of these allegations violated anything, and especially not the attorney's Affirmation of Nondisclosure of Forensic Report that Goun describes in her papers. That affirmation is signed by "the attorney of record" and, like Section 235(1), applies no restrictions to the parties themselves. Indeed, the attorney affirmation states unequivocally that "the Report may be shown to either party parent" and places no restrictions on what those parents might do

22

with the information they learn.[7] And in any event, the FAC does not even conflict with any of the provisions in that affirmation, *i.e.*, it does not "quote any language from the report."

Goun's suggestion that the report itself might not be admissible or obtainable by the parties is thus unsupported, premature, and irrelevant (as are all of Goun's arguments about admissibility at this stage). "Evidentiary questions, such as the one present in this case, should especially be avoided at such a preliminary stage of the proceedings." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976). For example, separate from the ultimate admissibility of the report itself, Goun has not shown that the forensic psychologist could not be called as a witness, or that other witnesses could not be called to attest to the effects of the report. Including allegations in a complaint that point towards potential sources of relevant evidence is in no way improper.

Goun relies on *Lipsky* to argue that the (presumed) inadmissibility of the forensic report supports striking *all* of the contested allegations. This reliance is misplaced. In *Lipsky*, the Second Circuit affirmed in part and reversed in part a district court order granting a motion to strike references to a prior SEC complaint against defendants, the resulting consent decree, and "a series of references to SEC objections to various CUC registration and proxy statements." *Id.* at 892. The Second Circuit affirmed the order to strike as to the SEC complaint and consent decree because consent decrees "are not true adjudications of the underlying issues; a prior judgment can only be introduced in a later trial for collateral estoppel purposes if the issues sought to be precluded were actually adjudicated in the prior trial." *Id. at* 893-94. The consent decree at issue "was the result of private bargaining"—"there was no hearing or rulings or any form of decision on the merits by the district court." *Id.* 894. In contrast, the court held that "the SEC's opinion on the sufficiency

---

[7] Further, the First Department has made clear that litigants cannot be restricted from taking notes of forensic reports in matrimonial matters. *See Sonbuchner v. Sonbuchner*, 96 AD3d 566, 568 (1st Dep't 2012).

of the various [proxy] statements may be relevant and may be admissible." *Id. at* 894. The court thus modified the district court's order "to the extent that plaintiff be permitted to amend his complaint to particularize the alleged inadequacies of the [proxy] statements." *Id. at* 894. The contested allegations here are nothing like the consent decree in *Lipsky*. There have been numerous hearings and decisions on the merits by the matrimonial court, meaning these underlying issues have been litigated.  Further, there are several witnesses who could be called to testify as to the issues determined in the forensic report (and the other issues raised in the matrimonial case).

Equally unavailing is Goun's argument that the contested allegations are not relevant to Goldstein's claims because they "do not bear on the threshold question of whether the state defendants had probable cause" to arrest and charge Goldstein in October 2022. Rule 12(f) motions on the grounds of impertinence or immateriality "'should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action.'" *McSweeney v. Cohen*, 776 F. Supp. 3d 200, 278 (S.D.N.Y. 2025). "Usually the questions of relevancy and admissibility in general require the context of an ongoing and unfolding trial in which to be properly decided." *Lipsky*, 551 F.2d at 893. "'If there is any doubt whether the challenged matter may raise an issue of fact or law, the motion to strike should be denied.'" *Kumaran v. Northland Energy Trading, LLC*, 762 F. Supp. 3d 322, 332 (S.D.N.Y. 2025). Goun does not come close to meeting that weighty burden to obtain the rare remedy of striking a complaint's allegations on the grounds of relevance. The contested allegations mainly consist of neutral factfinders' determinations regarding Goun's credibility as to the underlying facts of this case and the veracity of her allegations against Goldstein. As such, they are clearly relevant to Goldstein's claims and requested damages.

24

*Third*, Goun has not demonstrated prejudice. Courts have found allegations to be prejudicial when they are "amorphous, unspecific and cannot be defended against." *G-I Holdings, Inc. v. Baron & Budd*, 238 F. Supp. 2d 521, 556 (S.D.N.Y. 2002). The contested allegations are concrete, specific, and were included in the FAC for their direct relevance to Goldstein's claims. Further, Goun can defend against the allegations in the complaint by calling her own witnesses or cross-examining witnesses called by Goldstein. *See Kumaran*, 762 F. Supp. 3d at 332 ("[W]hile the allegations on their face suggest that Kumaran could face some prejudice from including them, she will have the opportunity to prove the facts alleged are false as the case proceeds.").

*Finally*, Goun's invocation of the children's interest is hard to swallow and merits a brief but forceful response. As Goldstein alleges, Goun manipulated the parties' children into becoming key witnesses against their father in what would have been a public criminal trial that could have sent him to jail for years and certainly garnered media attention. If it wasn't for the intervention of independent prosecutors in the Bronx DA's office, the children would almost certainly have been called to provide false testimony in court at trial against their father. Because of Goun's actions, the children have already been subjected to serial and traumatic interviews by law enforcement, prosecutors, and ACS caseworkers. The children are the biggest victims here, and Goun is their biggest victimizer. For Goun to now suggest that Goldstein is harming those children by holding her to account for her horrific misconduct is simply beyond the pale.

## CONCLUSION

For the foregoing reasons, Goldstein respectfully requests that the Court deny Goun's motion to dismiss and to strike.

By: _____

Benjamin D. White

BLOCH & WHITE LLP
Michael L. Bloch, Esq.
Benjamin D. White, Esq.
Catherine G. Willett, Esq.
152 West 57th Street, 8th Floor
New York, New York 10019
(212) 901-3820
mbloch@blochwhite.com
bwhite@blochwhite.com
cwillett@blochwhite.com

THE LAW OFFICES OF JOEL B. RUDIN, P.C.
Joel B. Rudin, Esq.
152 West 57th Street, 8th Floor
New York, New York 10019
(212) 752-7600
jbrudin@rudinlaw.com

*Attorneys for Plaintiff Joseph Goldstein*

## **CERTIFICATE OF COMPLIANCE**

I, Benjamin D. White, certify that this memorandum of law is in compliance with Section 202.8-b of the Uniform Rules for the Supreme Court & County Court.  I further certify that, excluding the caption, table of contents, table of authorities, and signature block, the foregoing memorandum of law contains 8,657 words according to the word count tool of the word processing software that was used to prepare the memorandum.

Dated:  September 15, 2025
       New York, New York

By:                              
                 Benjamin D. White